## CHARLES A. SWEET *vs.* HORACE DUTTON & another.

A., by deed, gave all her property real and personal, to a trustee in trust to pay the income to her during her life, and on her death to pay and transfer the trust property as she should by will appoint, and in default of appointment, to convey and pay over the trust property to her heirs at law. The deed provided that the trustee might change the mode of investment of any of the property, real and personal, and invest the proceeds as he might see fit, and referred to a schedule annexed as containing all the property conveyed by the deed. This property was all personal, and the trustee made no changes in the investments. *Held,* that on the death of A. intestate, the property went to her husband, and not to her child.

BILL IN EQUITY, against Horace Dutton and Martha S. Dut-
ton, alleging that Martha G. Sweet, the plaintiff's daughter, on
December 24, 1868, entered into an indenture with the plaintiff,
by which she conveyed to him "all the property, both real and
personal, of which I am now seised, or to which I am in any way
entitled either in law or equity," in trust to pay the net income
to her during her life, free from the control of any future husband
she might have, and on her death to pay over and transfer all the
property in his hands to such persons as she should by her last
will or other instrument in writing appoint, and, in default of
such will or appointment, then "to convey and pay over the said
trust property to her heirs at law;" that the deed contained the
following provisions: "The said Martha G. Sweet hereby fully
authorizes and empowers said Charles A. Sweet to sell, assign,
grant and convey or change the mode of investment of all or any
part of said property, both real and personal, as he may in his
judgment see fit, and execute all needful papers, under seal or
otherwise, and invest the proceeds of the same as he may deem
best; to have and to hold said proceeds so invested in trust, in
the same manner and on the same terms as aforesaid." "The
said Charles A. Sweet agrees to keep an account of said property,
a schedule of which, as at present constituted, is hereunto annexed
and marked A;" that the schedule annexed contained only bonds,
railroad stock and bank stock; that the plaintiff took possession
of the property therein described, and still holds the same; that
Martha G. Sweet was afterwards married to the defendant Hor-
ace Dutton, and died intestate June 25, 1871, leaving an infant
child, the other defendant. The prayer was for instructions as
to whether the trust property belonged to the husband or the
child. A guardian *ad litem* was appointed for Martha S. Dutton
he and Horace Dutton filed answers, admitting the allegations of
the bill, and the case was reserved by *Colt*, J., on the bill and
answers, for the determination of the full court.

*H. G. Parker*, for Horace Dutton.

*R. D. Smith*, for the guardian *ad litem* of Martha S. Dutton.

CHAPMAN, C. J. By an indenture made between the plain-
tiff and his daughter, Martha G. Sweet, on December 24, 1868

she conveyed to him in trust all her property, to be held by him during her life, and to pay the income to her, free from the control and interference of any future husband she might have. Upon her death he was to pay over and transfer all the property in his hands to such person as she should by her last will or other instrument in writing appoint, and in default of such will or appointment, then to convey and pay over the said trust property to her heirs at law. The instrument purports to convey "all the property, both real and personal, of which I am now seised or to which I am in any way entitled, either in law or equity." A schedule of the property is annexed to the instrument, consisting of bonds, railroad stocks and bank stocks ; and this is the only property which the plaintiff now holds. She was married to the defendant Horace Dutton, and died on June 25, 1871, leaving her husband and an infant daughter. The object of the bill is to ascertain which of these persons is entitled to the property. If it were real estate, it would go to the daughter as heir ; but the husband contends that, being personalty, it goes to him as distributee.

The meaning of the word "heirs" in a bequest of personal property has been much discussed in the cases cited, and in other cases cited in the text books referred to. In *Gittings* v. *M'Dermott*, 2 Myl. & K. 69, and in some other English cases, it is said that the construction of the word must be governed by the nature of the property. In many cases this may be so, but not in all. The more comprehensive rule is, that it must be governed by the intent of the testator ; and if his intent appears to be to designate those who are strictly his heirs in the primary sense of the term, and not distributees, it must be so construed ; as in *De Bouvoir* v. *De Bouvoir*, 3 H. L. Cas. 524, and *In re Rootes*, 1 Drew. & Sm. 228, and other cases. This court so held in *Clarke* v. *Cordis*, 4 Allen, 466, 480. See also *Loring* v. *Thorndike*, 5 Allen, 257. But in *Houghton* v. *Kendall*, 7 Allen, 72, the court said that, when the word "heirs" is used in a gift of personalty, it should primarily be held to refer to those who would be entitled to take under the statute of distributions.

If, then, the instrument before us were a will, the word " heirs " ought, according to the whole course of the authorities, to be construed as meaning distributees, there being nothing to indicate a different meaning. The instrument, however, is not a will, but a transfer of personal property ; and no authority has been cited, where the word has been used in such an instrument except in its primary signification. The question then arises, whether the extended signification is to be limited to wills. We think it is not.

In *Morton* v. *Barrett*, 22 Maine, 257, 264, it is said that, to carry into effect the intent of the testator, the word heirs should be construed to mean heirs apparent, or children, or those entitled under the statute of distributions ; and in *Mace* v. *Cushman*, 45 Maine, 250, 261, it is said that, in the common use of language, the children of a deceased intestate leaving personal property would be called his heirs, and such term would be justified by the definitions of the word " heirs " by lexicographers, but technically they would not take as heirs, but as distributees. In that case, the court held that the word was intended to mean the persons who were entitled to the property of the deceased according to the laws in force. The courts have extended its meaning in construing wills, because they found that testators so used it. Testators are apt to use words in a new sense, different from their original and technical meaning, when such new meaning has come into common use ; and when it comes into common use, it is often adopted in other instruments. According to *Mace* v. *Cushman*, cited above, this new meaning of the word " heirs," in application to personalty, has acquired a proper place in lexicography. This is according to the common course of change that is constantly going on in living languages. ·

In view of these circumstances, we think it is to be presumed that in this instrument the parties used the word in the same sense in which they would have used it in a will, and that the property should go to the distributee. *Decree accordingly.*