THOMAS W. MERRILL *vs.* SARAH S. PRESTON & others.

Suffolk.   March 26. — Sept. 8, 1883.   FIELD, DEVENS & W. ALLEN, JJ., absent.

A. executed a trust deed in this Commonwealth, where he was then domiciled, by which he conveyed certain personal property to a trustee, in trust to pay the income of a portion to B. for life, and, on the death of B., to pay the principal of that portion to A., if then living, and, if not then living, to A.'s "heirs at law." The trust deed authorized the fund to be invested in real estate, and looked to a possible division in that form. A. died after B., and at the time of his death he was domiciled in another State. The fund always remained invested in personal property. *Held,* that the construction of the instrument depended upon Massachusetts law, and that the term "heirs at law" meant heirs at law, and not next of kin, or persons entitled under the statute of distributions relating to personal estates.

A. executed a trust deed in this Commonwealth, where he was then domiciled, by which he conveyed certain personal property inherited from his father, to a trustee, in trust to pay the income of a portion to B., for life, and, on the death of B., to pay the principal of that portion to A., if then living, and, if not then living, to A.'s "heirs at law." A. died before B., leaving a mother, a widow, and certain uncles and aunts, descendants of his paternal grandfather. The trust fund remained invested in personal estate. A., at the time of his death, was domiciled in another State, by the law of which, if he had left real estate which descended on the part of his father, it would have passed to his uncles and aunts, as descendants of his paternal grandfather; if it had vested in the intestate by purchase, or in any other way than descent on the part of the father or mother, it would have passed to his mother. *Held,* that, if the law of the State of his domicil at the time of his death governed, the mother was to be deemed his heir at law.

BILL IN EQUITY, filed June 22, 1882, by a trustee, to obtain the instructions of this court, and alleging the following facts:

On February 22, 1877, Sarah S. Preston and Horatio W. Preston, her son, executed in this Commonwealth, where they were then domiciled, an instrument, by which they conveyed certain personal property to the plaintiff, in trust to pay over the net income which might arise from two ninth parts of said property, semiannually, to Alonzo F. Preston and John A. Preston each, during his life, and at his decease to divide one of said two ninth parts among his children, and the other ninth part, or, in case there should be no children then living, both said ninth parts, one third thereof to said Sarah S. Preston, "and the other two thirds thereof to said Horatio W. Preston, if then living, but if then deceased, to his heirs at law."

The instrument gave the following powers to the trustee: "And in trust, if said trustee shall deem it expedient, to sell the whole or any part of the property which may at any time be held by him in his capacity as trustee as aforesaid, and to change any investments so held by him, then to sell by public auction or private sale, for such considerations or on such terms as he shall from time to time deem expedient, any such estate, property or investment, and to make, execute, acknowledge and deliver suitable conveyances and sufficient transfers of said property, and to loan and invest the net proceeds thereof in such real estate, real estate mortgages, United States bonds, or scrip shares of stock of any corporation, or in such other property or securities as said trustee shall in his discretion select. And to take conveyances of the property in which the same shall be invested to himself, to be held upon the same trusts, to the same uses, for the same purposes, and with the same powers, as the property so sold was held under this instrument, or otherwise dispose of said net proceeds, or any part thereof, according to its provisions; and in trust to retain, during the pleasure of the trustee, any portion or portions of said trust property invested as the same now is; and in trust to hold said trust property in common and undivided, until such time or times as it shall be necessary to divide the same in order to carry out and fulfil the respective requirements herein contained, and in conveying, transferring and paying over shares or portions of said trust property, as hereinbefore provided or required, in trust to appraise and set apart in such manner as said trustee may deem just, and to convey, transfer and deliver to the persons entitled thereto, according to the foregoing provisions, so much of said trust property, real, personal or either, as said trustee may judge equal in value to such share or portion; or if said trustee shall deem it expedient to sell and convey sufficient of said trust property to enable him to pay in money what he may deem to be the just value of such share or portion, and in making the divisions, apportionments and conveyances of said trust property, as hereinbefore required, to divide, apportion or convey to the person or persons entitled thereto his, her or their portions in any such funds, property or estate as said trustee shall elect, and at such valuation as said trustee may deem just, said trustee not to be held responsible

for his decisions or doings in or concerning the same, nor for any loss which may happen or arise therefrom."

Horatio W. Preston died in 1878, domiciled in Maryland, leaving no issue, but leaving a mother, said Sarah S. Preston, several uncles and aunts, descendants of his paternal grandfather, and a widow, to whom he devised " all the residue of my property, this not to conflict with her rights of dower, should there be children born to us, then the child or children to share alike with my wife as residuary legatee." A statute of Maryland, in force at the death of Horatio, provides that " Every devise of land, or any estate therein, or bequest of personal estate, to the wife of the testator, shall be construed to be intended in bar of her dower in lands or share of the personal estate respectively, unless it be otherwise expressed in the will." Maryland Code of 1878, art. 50, § 227. Under the will of Horatio, his widow has received personal property to the value of more than $400,000. She has since married one Frank Brown. John A. Preston died in 1881, leaving two children, who have received from the trustee one of said two ninths; and one third of the other ninth part has been paid to Sarah S. Preston.

The property in question, which came from the husband of Sarah S. Preston and the father of Horatio W. Preston, has always consisted of personal property.

Under the laws of the State of Maryland, at the time of the death of Horatio, real estate descended as follows:

If the estate descended on the part of the father, and the intestate left no issue, and no father nor brother nor sister of the blood of the father, and no descendant from them, and no grandfather on the part of the father, the estate descended to " the descendants of such grandfather and their descendants, in equal degree equally."

If in the descending or collateral line any father or mother may be dead, the child or children of such father or mother shall by representation be considered in the same degree as the father or mother would have been if living, and shall have the same share of the estate as the father or mother, if living, would have been entitled to, and no more; and in such case, when there are more children than one, the share aforesaid shall be equally

divided among such children, provided that there be no representation admitted among collaterals after brothers' and sisters' children.

" If the estate descended to the intestate on the part of the mother, and the intestate shall die without any child or descendant, then the estate shall go to the mother."

If the estate shall be vested in the intestate by purchase, or shall descend to or vest in the intestate in any other manner than as hereinbefore mentioned, and there be no child or descendant of such intestate, and no brother nor sister nor descendant from them, and no father, the estate goes to the mother.

Under the same laws, the distribution of intestate personal property is determined as follows : if the intestate leave a mother and a widow, and no child nor descendant, nor father nor brother nor sister, nor child or descendant of a brother or sister, the personal property shall be divided equally between the widow and the mother.   Maryland Code of 1878, arts. 47, 48.

It appeared, by the answer of her executors, that Sarah S. Preston died on July 15, 1882.

Hearing before *C. Allen*, J., who reserved the case for the consideration of the full court.

*B. F. Brooks & H. G. Nichols*, for the executors of Sarah S. Preston.

*W. B. Durant*, for the uncles and aunts.

*C. A. Prince & F. Peabody, Jr.*, for the widow of Horatio W. Preston and her husband.

HOLMES, J.   The different sets of defendants all claim under a limitation to the " heirs at law " of Horatio W. Preston, each asserting that they are the persons designated.   In order to decide between them, we must determine first whether the words "heirs at law " are to be taken to mean heirs at law, or next of kin, or persons entitled under the statute of distributions ; next, by what law the members of the class in question are to be ascertained ; and then, finally, who they are.

Upon the first question, which turns on the construction of a Massachusetts instrument, and must depend on Massachusetts law, we have little doubt.   The words are to be taken in their literal sense.   It is true that *Sweet* v. *Dutton*, 109 Mass. 589,

can only be reconciled with this construction by laying hold of minute differences, which might lead to the conclusion that in that case the settlor meant simply that, if she failed to make a will, the law should take its course. But, upon questions of construction when no arbitrary rule is involved, it is always more important to consider the words and the circumstances than even strong analogies in earlier decisions. The successive neglect of a series of small distinctions, in the effort to follow precedent, is very liable to end in perverting instruments from their plain meaning. In no other branch of the law is so much discretion required in dealing with authority. Viewed as authority, however, *Sweet* v. *Dutton*, it should be noticed, relied largely on *Mace* v. *Cushman*, 45 Maine, 250, which has since been overruled in the State where it was decided (*Lord* v. *Bourne*, 63 Maine, 368); stands almost entirely alone (see *Richardson* v. *Martin*, 55 N. H. 45, 47); and is hardly to be reconciled with the generally accepted rules upon the subject. There is a strong presumption in favor of giving words their natural meaning, and against reading them as if they said something else, which they are not fitted to express.

In the present case, the property handed over was personalty, and, if the deed before us had contemplated a trust of personalty only, there would have been a stronger, although not necessarily a conclusive, argument in favor of construing an ultimate limitation to heirs in a sense adapted to the mode in which personal property devolves. But this deed authorized the fund to be invested in real estate, and looked to its possible division in that form. The donors stood indifferent between land and chattels, and were as ready to have the money put into one as the other. It was perfectly natural for them to select the mode of intestate succession to land as that on which to model their disposition, and we perceive no reason to doubt that they meant to do so. *Clarke* v. *Cordis*, 4 Allen, 466, 480. *Mounsey* v. *Blamire*, 4 Russ. 384. *Smith* v. *Butcher*, 10 Ch. D. 113.

The construction which we adopt puts an end to the claim of Horatio W. Preston's widow. It is therefore unnecessary to consider whether any other meaning of the words would be broad enough to let her in, as in *Sweet* v. *Dutton*, *ubi supra;* or whether it would be confined to the next of kin, and thus give

the property to the mother; or whether, if heirs meant persons taking under the statute of distributions, the widow would be excluded by the provisions of her husband's will in her favor, coupled with the statutes applicable to the case.

The next question is by what law the heirs of Horatio W. Preston are to be ascertained. If the trust had been created by a third person, there would be a strong argument that, as it was a Massachusetts trust, the donor must be supposed to have had in mind the Massachusetts law of descent, and to have meant those who would be the heirs of Horatio Preston in respect of Massachusetts lands, wherever Preston was domiciled, and that therefore the mother was entitled. *Boyes* v. *Bedale*, 1 Hem. & M. 798. See *Sewall* v. *Wilmer*, 132 Mass. 131. On the other hand, the fact that Preston was himself the donor may make against a construction which takes the determination of the class out from its ordinary dependence upon his will, so far as a change of domicil might affect it, and fastens it to a particular law. However this may be, we are content to assume, for the purposes of this case, that the law of Maryland, where Preston was domiciled at his death, is to determine who are his heirs. See *Ross* v. *Ross*, 129 Mass. 243, 257.

It remains to inquire whom the Maryland law designates. Unfortunately, the Maryland law designates different persons in different contingencies, and it may be argued plausibly enough that either class is the one to take here. The decision between them again depends upon the construction of the deed. At this stage, the debate is between the uncles and aunts of Horatio W. Preston, and his mother. It is argued for the former, that they are entitled as the persons who would have been heirs at law *quoad* this particular property, but for the settlement. For in order to ascertain who would have taken the property as heirs if it had been land, (it is tacitly assumed,) we must regard it as land throughout, and therefore, as the property came to Horatio from his father, although in the form of personal estate, we must consider it as if " the estate descended on the part of the father," and then the statute gives it to the uncles and aunts in terms, as the descendants of the grandfather on the part of the father. In the view which we take, it will be unnecessary to decide most of the points raised by this argument. We need not discuss

whether, in order to ascertain the parties to whom personal estate is given under the designation "heirs at law," it is necessary or proper to consider the fund as if it had been land at any moment except at the instant of vesting; or whether the statute would apply to land purchased by the son with personal estate received from the father; or whether, if the phrase "heirs at law" were to be connected with the specific property at all, we must not consider the trust deed, which disposed of the fee and limited a new series of trusts, as the starting-point, and deal with it in the same way as if the donor had been a stranger, and therefore adjudicate in favor of the mother, as the person who would have inherited the property from Horatio W. Preston if he had taken as first purchaser. The cases on this delicately balanced question are not uniform, and we express no opinion upon it. *Anon.* Dyer, 133 *b*, 134 *a*. *Counden* v. *Clerke*, Hob. 29, 31. *Godbold* v. *Freestone*, 3 Lev. 406. *Abbot* v. *Burton*, 2 Salk. 590. *Harris* v. *Bishop of Lincoln*, 2 P. Wms. 135. *Holloway* v. *Holloway*, 5 Ves. 399, 404. *Davis* v. *Kirk*, 2 K. & J. 391. *Aspden's estate*, 2 Wall. Jr. 368, 447.

We think that the phrase "heirs at law" is not to be connected with this specific property for its interpretation. The settlement devests the whole estate from Horatio W. Preston, and gives none of it back to him in the event which has happened. The gift to heirs is simply an ultimate disposition, when all the special objects of the trust have failed. We think that, taking all the circumstances into account, including the somewhat artificial character of the importation of Maryland law into this instrument, the heirs at law meant are not those who might be such in an exceptional case, according to an exceptional rule of problematical application, but those who would inherit Horatio W. Preston's land by the general law of descent. The law of Maryland would give any land of Horatio, except that which descended from his father, to his mother; and, upon the whole case, we think that his mother, Sarah S. Preston, was entitled to the fund.                    *Decree accordingly.*