WALTER P. TILLMAN, in his own right and as surviving Executor, *v.* ELLEN AUGUSTA DAVIS et al., Appellants, GRACE E. BIRD et al., Respondents.

The word "heirs," when applied to the succession of personal estate, means "next of kin;" the latter term refers to relatives by blood, and does not include a widow.

The will of G. gave her residuary estate to her executors, in trust, with power to receive the rents and profits of the real estate, and to sell the same when and in such manner as in their discretion might seem expedient; also to convert and collect the personalty, to invest the proceeds of both, and, after setting apart out of the estate or the proceeds a sum specified, to receive the rents and income of the remainder, and apply the same to the use of the testator's husband during life. After his decease, and after the deduction of certain legacies given out of the fund, she directed the residue to be divided into certain shares or parts, each of which she gave to a beneficiary named, one part being given to D., who resided in Illinois; the clause closed thus, "the heirs of any or either of the foregoing persons who may die before my said husband to take the share which the person or persons so dying would have taken if living." D. died in the life-time of the husband, leaving a widow, but no children; he left a will, wherein he gave to his wife all his interest under the will of G.; the husband of the latter thereafter died intestate. By the laws of Illinois, in case D. had died intestate his widow would have been entitled to all of his personal estate. In an action to determine, among other things, the interests of the parties under the will of G., *held*, that by the terms of the will all of the real estate of the testatrix was, upon the death of her husband, to be converted into money for the purpose of distribution, and hence the whole estate at that time

was to be considered as personalty; that the interest, however, of D. therein terminated upon his death, and his heirs were entitled to take by substitution; that, therefore, D. could and did convey nothing by his will; that the word "heir" referred only to relatives by blood, and did not include the widow of D.; and that, therefore, she was not entitled to any portion.

The authorities in this State defining the words "heirs" and "next of kin" collated; and the English authorities and those of the other States, holding that those words included a widow, cited, and their doctrine disapproved.

(Argued January 22, 1884; decided February 8, 1884.)

APPEAL by defendants Ellen A. Davis, the widow, and the executors of William N. Davis, deceased, from a judgment of a Special Term of the Supreme Court, in the first judicial department, entered upon the report of a referee, a reference having been ordered by an interlocutory judgment, which, so far as appealed from, was affirmed by the General Term of said department, by order made February 2, 1883; also appeal from the order affirming said interlocutory judgment.

This action was brought by plaintiff individually and as surviving executor of the will of Julia Augusta Gentil, deceased, for a settlement of his accounts as executor and trustee, a determination of the rights and interests of the parties under said will, and directions as to the distribution of the fund in his hands.

The provisions of the will so far as material, and the facts so far as pertinent thereto, are set forth in the opinion.

*Duncan Smith* for appellants. William N. Davis took, under the will of Mrs. Gentil, a vested and absolute estate, which, under his will, passed to his widow, subject to the life estate of Theodore Gentil. (2 R. S. 723, § 13; 3 id. [7th ed.] 2256, tit. 4, § 2; *Everitt* v. *Everitt*, 29 N. Y. 39, 75; *Loder* v. *Hatfield*, 71 id. 92, 98; 1 Jarman on Wills, 760, 761; 1 Roper on Legacies, 83, 584, 603; 2 Jarman on Wills, 742, rule 12; *Thornhill* v. *Hall*, 2 C. & F. H. of L. 22; *Kiver* v. *Oldfield*, 4 DeG. & J. 30; *Roseboom* v. *Roseboom*, 81 N. Y. 356; *Campbell* v. *Beaumont*, 91 id. 464; *Norris* v. *Beyea*, 3 Kern.

273 ; *Tyson* v. *Blake,* 22 N. Y. 558 ; *Bundy* v. *Bundy,* 38 id. 410 ; *Taggart* v. *Murray,* 53 id. 233 , *Hoppock* v. *Tucker,* 59 id. 202 ; 2 Jarman on Wills, 734, rule 18; 1 Redfield on Wills, 431, 451.) Under the provisions of the will, upon the established principles of equitable conversion, the whole of the remainder of Mrs. Gentil's estate subject to division upon the death of Theodore Gentil, the life tenant, is to be considered and treated as personal property. (*Phelps' Executors* v. *Pond,* 23 N. Y. 69; *Stagg* v. *Jackson,* 1 Comst. 206.) A gift, by will, of personal property to the "heirs" of any person in the event of his death is a gift to those who, if such person died intestate, would succeed to his personal property according to law, unless the "heir at law" is the person "designated" in the will to take the personal property. (*Holloway* v. *Holloway,* 5 Ves. 399; *Vaux* v. *Henderson,* 1 J. & W. 388 n. ; *Gittings* v. *McDermott,* 2 M. & K. 69; *Jacobs* v. *Jacobs,* 16 Beav. 557; *Low* v. *Smith,* 2 Jur. [N. S.] part 1, p. 344; *Doody* v. *Higgins,* 2 K. & J. 729; *In re Porter's Trust,* 4 id. 188; *In re Philp's Will,* L. R., 7 Eq. Cas. 151 ; *Finlason* v. *Tatlock,* 9 id. 258; *In re Steevens' Trust,* 15 id. 110 ; *Wingfield* v. *Wingfield,* L. R., 9 Ch. Div. 000 ; *Croom* v. *Herring,* 4 Hawks, 393; *Freeman* v. *Knight,* 2 Ired. Eq. 72 ; *Eddings* v. *Long,* 10 Ala. 203 ; *Corbit* v. *Corbit,* 1 Jones' Eq. 114 ; *Scudder* v. *Van Arsdale,* 2 Beasley, 109 ; *Houghton* v. *Kendall,* 7 Allen, 72, 77 ; *Sweet* v. *Dutton,* 109 Mass. 599 ; *De Beauvoir* v. *De Beauvoir,* 3 H. L. Cases, 524 ; *In re Foote,* 1 D. & S. 228 ; *Clark* v. *Cordis,* 4 Allen, 466, 480; *Lorenz* v. *Thorndike,* 5 id. 257.) Under the clause in question, the "heirs at law" of Wm. N. Davis do not take as "*personœ designatœ.*" (*Hamilton* v. *Mills,* 29 Beav. 193.) Where, as in the present case, there is an equitable conversion into personalty, of which the bulk of the estate consisted of that portion which was realty, the gift is to be considered a gift of personalty. (*Herrick* v. *Franklin,* L. R., 6 Eq. 593 ; *Savage* v. *Burnham,* 17 N. Y. 569.) The rule of interpretation contended for applies, even where the only indication in the will that the testator intended the dis-

tributees under the statute to take is afforded by the use of the word "heirs" in the gift of the personalty. (*Houghton* v. *Kendall*, 7 Allen, 72, 77; *Sweet* v. *Dutton*, 109 Mass. 599; *Corbit* v. *Corbit*, 1 Jones' Eq. 114; *Scudder* v. *Van Arsdale*, 2 Beasley, 109; *Loomis* v. *White*, 16 N. Y. W'kly Dig. 407.) The rule that the property is to go to the distributees under the statute is the reasonable one in accordance with the intention of the testator in such a case. (*Rawson* v. *Rawson*, 52 Ill. 62.) If the statute of distribution of New York, the place of domicile of Mrs. Gentil, is to control, Mrs. Davis is entitled to a moiety of the William N. Davis share, and to $2,000 in addition. (3 R. S. [6th ed.] 104, § 90 [75], subd. 3.)

*John Clinton Gray* for respondents. Whether William N. Davis took a vested interest in his share, or whether his interest therein was contingent upon his surviving the husband of testatrix, upon the death of said husband, other persons took as substituted legatees in the place of Davis, to-wit, those persons who answered the description of "heirs" of William N. Davis. (*Drake* v. *Pell*, 3 Edw. Ch. 251, 268; *Williams* v. *Peabody*, 8 Hun, 272; *Adams* v. *Beekman*, 1 Paige, 632; 1 Roper on Legacies, 396; *Williamson* v. *Field*, 2 Sandf. Ch. 586; R. S., part 2, chap. 1, tit. 2, art. 1, § 13; *De Peyster* v. *Clendening*, 8 Paige, 295, 307; *Lawrence* v. *Bayard*, 7 id. 70; *Moore* v. *Lyons*, 25 Wend. 144; *Nodine* v. *Greenfield*, 7 Paige, 548; *Hamlin* v. *Osgood*, 1 Redf. 410; *Doe* v. *Martin*, 4 T. R. 39; *Stanley* v. *Stanley*, 16 Ves. 491; *Asbrey* v. *Bury*, 1 B. & B. 53; *Driver* v. *Driver*, 6 Price, 41; *Carver* v. *Jackson, ex dem. Astor*, 4 Peters, 190.) The word "heirs" is not necessary in this State to create or convey an estate in fee, nor does its use distinguish a fee-simple absolute from a defeasible fee or a conditional fee. The distinction must be made and sought in words of defeasance or of condition. (1 R. S. 749; 2 R. S. [Banks' 6th ed.] 1130, § 1; id. 722; id. 1100, § 2.) The widow of William N. Davis can take nothing if the persons who answer the description of heirs of Davis are the persons entitled to take under the will as

substituted legatees. (2 Sandf. Ch. 586 ; 2 Redf. on Wills, 653 ; *Wright* v. *Methodist Episcopal Church,* Hoff. Ch. 202 ; *Slosson* v. *Lynch,* 43 Barb. 147 ; *Drake* v. *Pell,* 3 Edw. Ch. 266, 270 ; *Hamlin* v. *Osgood,* 1 Redf. 410.) Where a bequest is left to a man's next of kin, relations or descendants, to be divided among them as if he had died intestate, his widow is not included and can take no part in the distribution of it. (*Slosson* v. *Lynch,* 43 Barb. 147 ; *Green* v. *Howard,* 1 Bro. 29 ; *Watt* v. *Watt,* 3 Ves. 244 ; *Garrick* v. *Lord Camden,* 14 id. 381, 382 ; *Bailey* v. *Wright,* 18 id. 49 ; *Wilson* v. *Frazier,* 2 Humph. 30 ; *Wright* v. *M. E. Church,* Hoff. Ch. 212, 213 ; *Murdock* v. *Ward,* 67 N. Y. 387– 390 ; *Cushman* v. *Horton,* 59 id. 149, 152.) The testatrix will be presumed to have known that the laws of New York would be applied in interpreting her will, and that those laws excluded the widow in case of a bequest of personal property to a man's "heirs." (*Richards* v. *Miller,* 62 Ill. 417 ; 1 Jarman on Wills, 1, 2 ; 2 Greenl. Ev., § 671 ; Story on Conflict of Laws, § 479 e ; *Chamberlain* v. *Chamberlain,* 43 N. Y. 424, 433 ; *Holmes* v. *Remsen,* 4 Johns. 460 ; *Vroom* v. *Van Horn,* 10 Paige, 549 ; *Parsons* v. *Lyman,* 20 N. Y. 103, 112 ; *White* v. *Howard,* 56 id. 144, 159 ; *Hawley* v. *James,* 7 Paige, 213 ; *Mills* v. *Fogel,* 4 Edw. Ch. 559; *Stewart's Will,* 11 Paige, 398.) This is a case which calls for the authoritative application of the maxim *stare decisis.* (*Curtis* v. *Leavitt,* 15 N. Y. 9, 247 ; *Leavitt* v. *Blatchford,* 17 id. 521, 543 ; *Van Winkle* v. *Constantine,* 10 id. 422; *Baker* v. *Lorillard,* 4 Comst. 257 ; *Wilkes* v. *Lyon,* 2 Cow. 394 ; *Ohio* v. *Debolt,* 16 How. [U. S.] 416– 432.)

EARL, J. Julia A. Gentil, a resident of New York, died January 26, 1874, leaving a last will and testament, in which, after directing her debts and funeral expenses to be paid by her executors, and after giving and bequeathing to her friend, Walter P. Tillman, one of her executors, the sum of $5,000, she gave, devised and bequeathed all the residue of her estate, real and personal, to her executors in trust for the uses and purposes

expressed in her will, and she authorized and empowered them to take possession of all her real estate, and to collect and receive the rents and profits thereof, and to sell and dispose of all or any part thereof, at such time or times, and in such manner as to them, in their discretion, might seem expedient and proper; and to execute and deliver deeds to the purchasers, and also to convert or collect her personal estate; and to invest and keep invested the proceeds of her real and personal estate, in such manner as to them might seem most judicious; and to collect and receive the income thereof. Then she directed them to set apart out of her real and personal estate, or of the proceeds thereof, the sum of $10,000, to receive the rents and income of that sum and apply the same to the sole and separate use during life of her aunt, Anna B. Davis, and at her death she gave the sum thus set apart to persons named in her will. In the sixth clause she willed and directed her executors to collect and receive the rents and income of all the remainder of her estate, and to apply the same to the sole use of her husband, Theodore Gentil, during his life. By the seventh clause of her will, from and after the decease of her husband, she gave various legacies therein named. The eighth clause of her will is as follows: " I will and direct that all the remainder of my estate so set apart for the use of my said husband during his life, immediately after his decease, first deducting therefrom the legacies bequeathed by the last preceding clause of this will, shall be divided into two equal parts as near as may be, and that then one of said shares or equal parts shall again be subdivided into seven equal shares or parts, and I give, devise and bequeath one of said seven equal parts of one of the said two equal parts to each of the following persons and their heirs, viz.: to Eugenia Newman, of Philadelphia, one part; to Charles Mifflin, of Boston, one part; to Sophia Gardiner, widow of the late Edward Gardiner, of Boston, one part; to Matilda Van Buren, the wife of Thomas Van Buren, of Chicago, one part; to Elizabeth D. Tillman, of Troy, one part; to William N. Davis, of Illinois, one part, and to the children of William A. Bird, of Black Rock, in the State of New York,

one part, the heirs of any or either of the foregoing persons who may die before my said husband to take the share which the person or persons so dying would have taken if living." By the ninth clause of her will she directed that the other of the two equal parts of the remainder of her real estate should again be subdivided into two equal parts, each part being equal to one-fourth of the whole remainder of her estate; and she gave one of such parts to three persons named, to be divided between them equally; the heirs of any or either of them who might die before her husband, to take the share which the person or persons so dying would have taken if living. In the tenth clause she gave the other of said last-named parts to five persons named, to be divided equally between them, share and share alike, the heirs of any or either of them who might die before her husband to take the share which the person or persons so dying would have taken if living. She appointed her husband and the plaintiff Tillman executors of her will. Her husband survived her, and died April 6, 1880, intestate and leaving no known heirs. William N. Davis died in 1878, in the life-time of the husband, in the State of Illinois. He left a widow, the defendant, Ellen A. Davis, but no children or parents. His nearest blood relatives were the respondents, Grace E. Bird, and others. He left a will wherein he devised to his wife all his interest in the property bequeathed to him in the will of the testatrix. By the laws of the State of Illinois Davis dying intestate his widow was entitled to the whole of his personal estate; and upon the trial of this action it was the contention of Mrs. Davis that she took the part bequeathed to her husband, either under his will, or as his heir under the will of the testatrix; and on the part of the Bird defendants, the contention was that they took that part as the heirs of Davis under the will of the testatrix. The latter contention was upheld by the Supreme Court, and whether or not that was right is the sole question for our determination upon this appeal.

It is quite clear, as contended by the learned counsel for the appellant, and as was held by the Supreme Court, that at the

termination of the life estate of the husband of the testatrix, all her real estate was to be converted into money for the purpose of distribution, according to the terms of the will, and hence that the whole estate at that time is, for the purpose of construing this will and giving effect to its provisions, to be treated as personalty.

It matters not whether the interest taken by Davis under the eighth clause of the will was a vested or contingent interest. Whatever it was, it was to be terminated by his death, in case he died before the husband of the testatrix. In that event it is quite clear that his heirs were to take by substitution in his place under the will of the testatrix. They were to take, not as heirs from him, but as heirs under the will. It is undoubtedly the rule laid down in many cases, that where a gift is made to a person, in absolute terms, as here, to him and his heirs, the estate thus given will not be held to be cut down or destroyed by a subsequent clause or provision in the will, unless the intention of the testator to do so is clearly manifested by the language used. Here the intention is clear. There can be no mistake about it. The testatrix intended, in case of the death of either of the legatees mentioned in the eighth, ninth and tenth clauses of her will, before her husband, that the heirs of the person so dying should take by substitution under the will. Hence it follows that Davis could convey nothing to his wife by the will which he executed, and that her only claim can be to take as the heir of her husband under the will of the testator. Thus we are brought to the main question in this case, which is, the meaning of the word "heirs" as used in the eighth section, and also in the ninth and tenth sections of this will.

The primary meaning in the law of the word "heirs" is the persons related to one by blood, who would take his real estate if he died intestate, and the word embraces no one not thus related. It is not strictly proper to designate persons who succeed to the personal estate of an intestate. The proper primary signification of the words "next of kin" is those related by blood, who take personal estate of one who dies intestate, and they bear the same relation to personal estate as the word

"heirs" does to real estate. The words "heirs" and "next of kin" would not ordinarily be used by any testatator to designate persons who were not related to him by blood. In this case, if the testatrix had intended that the widow of Davis should take by substitution in his place the whole or any part of the legacy given to him, it is presumable that her name would have been mentioned. Or if it had been intended by the testatrix that those persons should succeed to the shares mentioned in the eighth, ninth and tenth clauses of the will, who were entitled to take under statutes of distribution, she would not have used the word "heirs," but would have designated them as the person entitled by law to take the personal property in such cases. It is presumable that she was attached to the legatees named in those clauses by ties of affection or of blood, and hence that she desired that the persons of the same blood, who might also be relatives of her blood, should succeed to the property.

In this State it has uniformly been held, when the question has arisen for consideration in the courts so far as we are able to discover, that the word "heirs" applied to the succession of personal estate means next of kin, and that the words next of kin do not include a widow or a husband of an intestate. In *Drake* v. *Pell* (3 Edw. Ch. 251), the will directed a division of personal estate among nine children of the testator, and provided that in case any of them should die after him, and after having attained the age of twenty-one years, then the portion or interest of the child so dying should go to the "heirs, devisees, or legal representatives" of the child so dying. One of the children, a daughter, died intestate, leaving a husband and children, and one of the sons died intestate, leaving a widow and children; and it was held that neither the term "heirs" or "legal representatives" included the husband or widow; that those terms meant "next of kin" and that a husband or widow did not answer to the description of "next of kin." In *Wright* v. *Trustees of Meth. Epis. Church* (Hoff. Ch. 202), a legacy was given by a testator to his second cousin, Euphemia Murray, or to her heirs. She had died before the

date of the will, leaving a husband and children ; and it was held that the word " heirs " meant next of kin, and did not include the husband, as he was not next of kin to the wife. The learned assistant vice-chancellor writing the opinion, cited various English authorities to sustain his decision. In *Slosson* v. *Lynch* (43 Barb. 148), under a marriage settlement the wife was to have the income for life of certain personal property with a certain power of appointment by will or otherwise, and in the event of her death before her husband, and in the absence of any appointment, then the property was to go to her issue then living and the children of such as might be deceased, and in default of such issue, " to the next of kin of the party of the first part ; " and it was held that the words " next of kin" meant those of the kindred or blood who took by the statute of distributions, in case of intestacy, but excluding a widow as such ; and the learned judge writing the opinion cited and commented upon many English decisions. In *Murdock* v. *Ward* (67 N. Y. 387), the residue of personal property was directed to be " equally divided among and paid to the persons entitled thereto as their, or either of their next of kin, according to the laws of the State of New York, and as if the same were personal property, and they or either of them had died intestate." And it was held that next of kin meant relatives in blood and did not include a widow. In *Luce* v. *Dunham* (69 N. Y. 36), a testator directed that all the rest, residue and remainder of his estate should be divided among his " heirs and next of kin in the same manner as it would be by the laws of the State of New York " had he died intestate ; and it was held that the words " next of kin " did not include a widow, and that the addition of the words referring to the laws in case of intestacy did not enlarge the class of legatees so as to include her. In that case the surrogate and the Supreme Court held that, the language not being simply that the personalty be distributed among the testator's next of kin, but being that it should be distributed among his next of kin " in the same manner as it would be by the laws of the State of New York" had he died intestate, these latter expressions

controlled the words "next of kin," and showed that they were intended to embrace all who would be distributees under the statute, and that the will should be construed as though the testator had directed, generally, that his residuary estate should be distributed according to the statute, as in the case of intestacy.  RAPALLO, J., writing the opinion of this court and disagreeing with this reasoning, said :  " A provision directing generally that on the decease of a testator, his personal property be distributed as provided by statute in case of intestacy, would, of course, entitle the widow to be included in the distribution though not specially mentioned ; but where the distributees are, by the terms of the will, confined to the next of kin of the testator, effect must be given to that restriction, and the reference to the statute, or to the laws, merely affords the rule of distribution among the next of kin as if there were no widow."  In *Keteltas* v. *Keteltas* (72 N. Y. 312) a will directed that the residuary estate should be divided among the testator's next of kin according to the statute of New York, concerning the distribution of personal estates of intestates ; and it was held that the words "next of kin" meant relatives in blood, and that they did not include the testator's widow.

These authorities, it seems to me, leave little more to be said. There is no reason for holding that the word "heirs," when applied to personal estate, has a broader or more comprehensive signification than the words "next of kin."  To hold that the word "heirs" includes all those persons who would take personal estate under the statute of distributions, and that the words "next of kin," even when associated with the words found in connection with them in the last three cases cited, do not include such persons, but include only relatives by blood, would make a distinction founded upon no reason, and altogether too nice for profitable use in the construction of wills and the administration of justice.

There are several decisions in England, however, which are not entirely in harmony with these views.  ( *Withy* v. *Mangles,* 10 Clark & Fin. 215 ; *Evans* v. *Salt,* 6 Bevan, 266 ; *Jacobs* v.

*Jacobs*, 16 id. 557; *Low* v. *Smith*, 2 Jurist [N. S.], Part 1, 344; *Doody* v. *Higgins*, 2 Kay & Johnson, 729; *Elmsley* v. *Young*, 2 Myl. & K. 82; *In re Porter's Will*, 6 W. Reporter, 187; *In the Matter of Porter's Trust*, 4 Kay & Johnson, 188; *In re Newton's Trusts*, 4 Eq. Cas. L. R. 171; *In re Steevens' Trusts*, 15 id. 110; *Wingfield* v. *Wingfield*, 9 Chan. Div. L. R. 658.) There is much confusion in the English cases upon this subject, and it is impossible to reconcile them. In the case *In re Stevens' Trusts*, a testator, after devising real estate to a devisee, and to her heirs and assigns, bequeathed to her trustees £500, upon trust, to invest and pay the proceeds to E. R. for life, and in case (which happened) E. R. should leave no child living at her (E. R.'s) decease, then she directed the trustees to divide the principal sum amongst the heirs of her late brother J. S.; and it was held that by the word "heirs" was meant the next of kin of J. S. according to the Statute of Distributions, together with the widow of J. S. if living at testatrix's death. Vice-Chancellor BACON, writing the opinion, said: "This is one of those cases which certainly call for the enactment of a Code, or of some rule for the interpretation of expressions to be found in wills. In the midst of the 'confusion worse confounded' which exists among the authorities on this subject, I must endeavor to put such a construction upon the language of this will as the general sense of the instrument requires." In *Withy* v. *Mangles*, by the settlement made on the marriage of E. M., the ultimate limitation of a sum of £10,000 which her father thereby covenanted to pay was "to such person or persons as at the time of her death should be her next of kin." E. M. died, leaving her husband and a child of the marriage, and her own father and mother surviving, and it was held that the father, mother and child of E. M. were equally her next of kin, and were entitled under the limitation to the £10,000 in joint tenancy. Lord CAMPBELL, writing one of the opinions, and speaking of the confusion into which the law of England had fallen, in reference to the words "next of kin," said: "It is impossible to deny that the law has by some bad luck got into a strange

state, and that now, unless great caution is observed in framing deeds, many calamitous consequences will take place." These utterances of learned English judges give me no courage to trace the English cases through all their perplexing mazes in search of the English rule upon the subject we are now considering. Suffice it to say that that rule seems to have been evolved by holding that the word "heirs," when applied to the devolution of personal property, means next of kin, and that the words "next of kin" in such cases mean those who would take personal property under the Statute of Distributions; and thus they are held to embrace the widow. Such a conclusion is at variance, as we have seen, with the reasoning upon which the cases in this State have been decided.

In a few cases in this country, in other States, it has been held that the word "heirs," when applied to personal property, means those that by the Statute of Distributions take the personal property in case of intestacy, and hence embraces widows. (*McGill's Appeal*, 61 Penn. St. 46; *Eby's Appeal*, 84 id. 241; *Sweet* v. *Dutton*, 109 Mass. 589; *Welsh* v. *Crater*, 32 N. J. Eq. 177; *Freeman* v. *Knight*, 2 Ired. Eq. 72; *Croom* v. *Herring*, 4 Hawks, 393; *Corbitt* v. *Corbitt*, 1 Jones' Eq. 114; *Henderson* v. *Henderson*, 1 Jones' Law, 221; *Alexander* v. *Wallace*, 8 Lea, 569; *Collier* v. *Collier*, 3 Ohio St. 369.) We see no reason for following these decisions. They reach the same result as some of the English decisions above referred to by holding that the word "heirs," when applied to personalty, is used in a broad sense to represent all the persons who, under the statutes in case of intestacy, would take the personalty just as when applied to real estate, it means all the persons who would take that in case of intestacy. But in the case of real estate it is not true that the widow ever takes as heir, and that word will never embrace her unless there is other language associated with it showing that it was intended to embrace her. Here the testatrix, when she made her will, was dealing with both real and personal estate, and she undoubtedly used the word "heirs" to designate blood relatives, and in the same sense,

whether applied to real or to personal estate.   If the property in controversy had been strictly real estate, the appellant would have taken nothing in it as widow, as her husband's interest, whatever it was, never vested in possession and did not survive him.   Neither if it had been real estate would she have taken as heir of her husband; and the reasoning is incomprehensible to me that would give her personal property under the designation of heir which would not give her real estate under the same designation.

We think the rule that has been adopted in this State is plainer, more easily applied and understood, will lead to less confusion, and will generally, if not universally, be more likely to give effect to the real intention of testators, and others settling their estates.

The primary object of all construction of wills is, in each case, to ascertain the intention of the testator, and to give effect to that within the rules of law.   The words " heirs " " next of kin " may be so used in association with other language, and under such circumstances as to show an intention to include others than blood relatives.   But in the absence of any thing showing a different intention they must be held to mean what they primarily import, relatives in blood.   In this State they have not by legal usage, or general custom, come to mean any thing else; and there is nothing in this will, and there were no circumstances connected with the testatrix or her estate to indicate that she intended by the word heirs a broader signification.

We are, therefore, of opinion that the judgment should be affirmed, with costs to the respondents and the appellants, to be paid out of the estate.

All concur.

Judgment affirmed.