NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—December, 1886.

MATTER OF SINZHEIMER.

*In the matter of the estate of* SIGMUND SINZHEIMER,
*deceased.*

The word "heirs," when used in a will to indicate beneficiaries of a be-
quest of personal property, must be interpreted as equivalent to
"next of kin," in. the absence of anything pointing to another inter-
pretation as more consonant to the testator's intention.

Testator, who left, him surviving, an aunt, L., his sole next of kin, by his
will devised and bequeathed the residue of his estate, which consisted
of personalty, with a specified exception to his "natural heirs."—

*Held,* that L. was the beneficiary indicated.

By another article of the same will, testator directed his executors, in case
one T. retained, at the time of testator's death, the ownership of cer-
tain realty, to pay "the two mortgages" (describing them) "now
liens upon the said house and lot, *or any balance of either or both.*"
One of the mortgages was paid by T. during testator's life time.—

*Held,* that the executors were only authorized to satisfy the other.

CONSTRUCTION of will, on judicial settlement of ac-
count of administrators with the same annexed.

FRASER & MINOR, *for administrators.*

SAMUEL D. SPEYER, *for Laura Levinger.*

JOHN E. BRODSKY, *special guardian.*

THE SURROGATE.—This decedent died in May, 1885,
leaving as his last will an instrument which was ex-
ecuted in July, 1882.   In November, 1884, he mar-
ried one Christina Tems to whom by the first article
of the will he has bequeathed a legacy of $5,000.
Mrs. Sinzheimer survived her husband and as admin-
istratrix *c. t. a.* of his estate is now accounting before

the Surrogate.  Upon this accounting two questions have arisen for determination.

*First.*  What is the true construction of the third article of the will?  Its language is as follows:

" All the rest, residue and remainder of my property, both real and personal, I give, devise and bequeath to the following parties, viz.:  Five thousand dollars to Katie Tems and the balance to my natural heirs."

Now who are the testator's *natural heirs?*  No children were born of his marriage.  He left him surviving no ancestors, descendants, brothers, sisters, nephews or nieces.  So far as appears, his only next of kin, at the date of his will and on the day of his death, was his aunt, Laura Levinger.

There can be no doubt that if he had given his residuary estate (which consists of personalty) to *his* " heirs " instead of to his " *natural heirs* " this aunt would have been entitled thereto, to the exclusion of all other persons.  The recent decision of the Court of Appeals in Tilman v. Davis (95 *N. Y.*, 17) has conclusively established that the word " heirs," when used by a testator to indicate the beneficiaries of a bequest of personal property, must be interpreted as equivalent to the term " next of kin," in the absence of any thing pointing to some other interpretation as more consonant to the testator's intention ; and that a man's widow is neither his heir nor his next of kin has been repeatedly declared by the courts of this State (Drake v. Pell, 3 *Edw. Ch.*, 251 ; Slosson v. Lynch, 33 *Barb.*, 147 ; Murdock v. Ward, 67 *N. Y.*, 387 ; Keteltas v. Keteltas, 72 *N. Y.*, 312 ; Tilman

v. Davis, *supra*). Unless, therefore, this testator's use of the word "natural" in connection with the word "heirs" somehow affects the signification which the latter word by itself would have, I must regard the case last cited as decisive of the matter under discussion.

Counsel have referred me to two reported testamentary cases in which the expression "natural heirs" has been the subject of judicial interpretation. These are Miller v. Churchill (78 *N. C.*, 372) and Ludlum v. Otis (15 *Hun*, 410). In the former the bequest was in these words: "I bequeath to my sisters, Nancy and Martha, each one thousand dollars, and in the event of the death of either without leaving natural heirs, the amount I have bequeathed shall go to the survivor." It was held that the testator must have used the term "natural heirs" as an equivalent for the term "children" or "issue." For very palpable reasons that conclusion was unavoidable.

The testator whose will was before the Supreme court in this Department, in Ludlum v. Otis (*supra*), left him surviving a sister, his mother and several cousins. He left neither wife nor child. It was held that a bequest given by his will to his "natural heirs" belonged to his mother and sister, they being the persons who, because of proximity of blood, would have succeeded to his personal property in the event that he had died intestate.

The case just cited differs from the case at bar in this particular. In the former it was of no practical consequence whether the term "natural heirs" was construed as meaning "heirs," or was held to have

no meaning at all. Upon the one theory the mother and daughter were entitled as next of kin to take under the will; upon the other they were similarly entitled to take under the Statute of Distributions. But in the present case, if the disposition of the residuary estate is to stand, the testator's aunt will receive the benefit, while if it is to be held void because of uncertainty in the description of the legatee, the property thus ineffectually bequeathed must fall to his widow. I do not find sufficient ground for holding the bequest of the residue invalid, in the mere fact that the testator has somewhat obscured his intentions regarding it, by tacking the adjective "natural" to the noun "heirs."

There is nothing in the context of the will, nothing, so far as appears in the circumstances of the testator or the state of his family, from which it can be inferred or suspected that by his use of the word "natural" he designed either to enlarge or restrict the meaning which would have been accorded to the word "heirs" standing by itself.

I hold, therefore, that Laura Levinger is entitled, as the testator's only next of kin, to his entire residuary estate.

*Second.* At the date of this testator's will, Miss Tems, who afterwards became his wife, was the owner of a certain dwelling house in this city, on which there were then subsisting two mortgages, one of $8,000, the other of $2,000.

In the lifetime of the testator, and before his marriage to Miss Tems, the $2,000 mortgage was paid off by her, and was satisfied of record. It is admitted

that the moneys thus applied were borrowed by Miss Tems, and that the lender was not repaid until after the testator's death. It is now claimed in her behalf that under the second article of the will she is entitled to be reimbursed for this payment. Such second article is in these words :

"I hereby order and direct my executors in case my said friend Christina Martha Tems retains at the time of my decease the ownership of the house and lot now owned and occupied by her, to pay and fully discharge the two mortgages, one of $8,000, and the other of $2,000, now liens upon the said house and lot, *or any balance of either or both,* and to fully free, release and discharge said property therefrom and to satisfy such mortgages."

The portion of the foregoing provision which I have italicized is inconsistent with any other interpretation than this : that to the extent that the mortgages in question were a lien upon the house and lot at the time of the testator's death, and to that extent *only* are his executors authorized to apply all or part of the sum of $10,000 for discharging the incumbrances upon such property.

Whether Miss Tems borrowed the $2,000 or found it, or received it as a gift of the testator, or otherwise obtained it, is therefore immaterial. The smaller of the two mortgages was in fact discharged before the testator's death, and so far as concerns that mortgage the situation for which he made contingent testamentary provision has ceased to exist.