Laubie, J.
This case comes into this court by way of appeal, and is an action for partition, and the question to be determined is, who takes the real estate devised in item third of the will of Armstrong L. Stewart, deceased, to the “heirs” of Etta. Long.
The heirs at law of the decedent, Armstrong L. Stewart, claim the estate in question on the one hand, and the defendant, Harris Long, claims it on the’other.
Mr. Stewart died March 26, 1891, leaving four children, among whom was Catherine A., or Kate. Powers, and Etta Long, who were married prior to his death. At the time of the death of said, testator Etta Long had no issue living. She was comparatively a young woman, and did have one child, a daughter, who died in infancy a month or two before the death of the testator, and after the making of the will in question. Etta Long died July 29,1892, intestate, leaving Barris Long, her husband, surviving her, but without issue. The will was executed March 7, 1889.
In the first item of his will the testator devised to his wife, Isabella Stewart, the use of all his property during her natural life; and the 2nd and 3rd items are as follows :
“Item 2nd. — I give and devise to my daughter Kate Powers, at the death of her mother, the use of the farm on which I now reside, situate in Fowler township, county of Trumbull, and state of Ohio, being part of Lot 16, bounded on the north by lands of heirs of Robert Morrow and Richard Steer; on the east by lands of heirs of Richard Steer ; on the south by the public highway, and on the west by the public square, and containing 69¿- acres of land, during her natural life, and at the decease of said Kate powers I give and devise the said farm to her heirs absolutely.”
“ Item 3rd. — I give and devise to my daughter Etta Long, at the death of her mother, the use of the farm on which she now resides, situated in Hartford township,, county of Trumbull, and state of Ohio, being part of Lot 26, and con- *145 turning 82 acres of land, for a further description of -which see Trumbull County Records, Volume 130, page 395, during her natural life, and at the decease of said Etta Long, I give and devise said farm to her heirs absolutely.”
The widow of the testator and the mother of these children having died, the plaintiff claims that the words “ to her heirs absolutely,” in these items of the will, mean to the children of the daughters, and that Etta Long having died without issue, the devise in remainder cannot take effect, and the estate falls, as undisposed of property, to the heirs of the testator, and that Barris Long hhs no interest in the property.
The defendant Barris Long claims that these words mean those who would take, under the law of descent, the property generally of Etta Long, in case of intestacy; and that, under such law, she having died intestate, without issue alive, the devise in remainder is to him.
-The case of Weston v. Weston, 38 Ohio St. 473, is referred to by counsel for the defendant Barris Long, as decisive of this question, but we do not so regard it. The syllabus is : “ A testator, having executed his will giving, in trust for the benefit of his sole and only child, property consisting of non-ancestral real estate and personal property, and directing that ‘ in case my said child should die without issue her surviving, then all and singular the property so devised shall pass to and vest in my heir-at-law/ died leaving surviving him his said child, and also his wife, a brother and two sisters who survived his child. Held: That upon the death of the child without issue, the widow of the testator succeeded to the property, under the will, as heir-at-law of the testator.” And in the opinion, p. 447, it is said : “ The ‘estate so devised’ consisted of personalty and non-ancestral realty, given by the ninth item to the child Mary, described by the testator ‘as my sole and only heir.’ This child having died ‘without issue her surviving.’ The question is, to whom does the estate pass under this item of the will ? To the widow of the testator, or to his brother and sisters? If the testator had *146 died intestate and -without children surviving him, this estate, both real and personal, would have passed to and vested absolutely in the widow, under the statute of descent and distribution of 'March 14, 1853, as amended April 16, 1862, and March 4,1865.”
It will be noted that the estate in question in that case, upon the death of the child, was not given to the heirs of the child, but to the heir of the testator, and was non-ancestral estate and personal property, which, under our statute, would pass absolutely to his widow. In the case at bar the gift is to the heirs of the child, and in her, the ancestor’s, hands the estate would be ancestral, and would not pass absolutely to the widower in case of intestacy. It is impossible to conceive of an heir without an ancestor, and the testator in this case made Etta Long the ancestor of those who were to take the fee, and as such, in her hands the estate would be ancestral; nor could she be the ancestor of Barris Long according to the primary significations of the xvords ancestor and heir, in which sense, in our opinion, the testator used the Avord “heirs.”
The question in all such cases is : Who does the testator mean by “heirs;” and not: Upon whom would the estate be cast by the statute of descents in case of intestacy ? In determining that question each case must depend upon its own facts and circumstances, and hence the difficulty of finding a legal precedent.
It is true, the court in the Weston case determined that the Avord “heirs” in its legal signification, must be held to include all those who might inherit under our statute in case of intestacy ; and held therefore in that case, that the widow succeeded to the property as heir at law of the testator. But' the court so held because there Avas nothing in the context, or the surrounding cii'cumstances, to indicate that the testator intended differently, and substantially affirmed Jones v. Lloyd, 32 Ohio St. 572, in Avhich, according to the syllabus, it was held:
*147 "3. The term “heirs,” when used in a will, is flexible, and should be so construed as to give effect to the manifest intention of the testator as ascertained by a due consideration of all the provisions of the will.”
"4. Where a testator makes a provision for his wife, in lieu of dower, and directs that, in event of her claiming dower, the balance of certain property bequeathed for her support 'shall be shared equally among my heirs/ the words ‘my heirs,’ will be construed as meaning my next of kin, or, my heirs according to the statute of distribution, exclusive of my wife, though his wife, in case of intestacy, would under the statute have taken all such personal property.”
"5. Hence, where the brothers and sisters of the testator are his next of kin, and are recognized as such by the statute of descent and distribution, after the wife, they are to be regarded as the legatees under such will — in case the widow declines to accept its provisions.”
Enlarging the classes of persons who may inherit, may call' for a change in the technical meaning of the term heirs, but it is certain that its technical common law meaning included only those of the same blood, and did not include husband and wife.
The civil law gave to the term a broader signification, and included all persons called to succession, whether by act of the party, or by operation of law. See Bou. Law D. under "Heirs” and "Heirs at Law.”
"The primary meaning in the law of the word 'Heirs’ is the person related to one by blood who would take his real estate if he died intestate, and the word embraces no one not thus related. It is not strictly proper to so designate persons who succeed to the personal estate of an intestate. The proper primary signification of the words 'next of kin’ is those related by blood who take personal estate of one who dies intestate, and they bear the same relation to personal estate as the word 'heirs’ does to the real estate. The word ‘heirs’ and 'next of kin’ would not ordinarily be *148 used by any testator to designate persons who were not related to him by blood.” Tillman v. Davis, 95 N. Y. 17.
“If husband and wife were of kin or heirs or each other, the relationship would extend to the children of either by a former marriage, and a decree of divorce would dissolve it. The common law doctrine of dower and curtesy originated in the fact that husband and wife are not heirs of each other. Ordinarily, technical terms are to be understood according to their legal signification, unless some evidence appears of an intention to use them in a different sense. The phrase ‘next of kin,” as applied to relatives by blood, having a technical legal signification under the statute of distributions when used without qualification, is held to mean next of kin according to the statute. Pinkham v. Blair, 57 N. H. 226. But husband and wife are nowhere included with ‘heirs’ or ‘next of kin’ in the statutes. These terms, in their proper and legal signification and acceptation, have reference to relationship by blood. Wilkins v. Ordway, 59 N. H. 378.
This expresses too, the ordinary understanding of the people, who generally have not learned of any other than the primary meaning of the word “heir”, and therefore regard the issue, or relatives by blood only, of a person as his heirs, and who do not therefore ordinarily use the word “ heirs” to designate a surviving husband or wife. And while the testator may be presumed to have knowledge of the statute, which devolves upon the widower of a childless intestate wife her non-ancestral lands, he is hardly to be charged with the knowledge of the.refined extension of the legal signification of the word “ heirs”, and that a widower takes as “heir at law,” and not as surviving husband in default of immediate heirs (children or their issue).
In New York, and many of the other states it is held that “ in the case of real estate it is not true that the widow ever takes as heir, and that word will not embrace her unless *149 there is other language associated with it showing that it was intended to embrace her.” Tillman v. Davis, supra, 29.
Again, nowhere in this will does the testator make any reference to a son-in-law — neither Powers nor Long. They are not within the natural objects of the bounty of the testator, and there ought to be something in the will which would at least support the idea that he designed and intended a son-in-law, or the husband of his daughter, Etta Long, as one of the objects of his bounty ; otherwise, it is natural to presume that he did not.
He carefully forbore apparently to speak of a son-in-law. He called his daughters ,by their married names it is true, but there is no reference whatever in the will'to the husbands.
“ The appellant was the husband of the testator’s daughter when the will was made. There is nothing in its provisions indicating a purpose to make him a beneficiary; and the fact that he is nowhere named in the will, is a circumstance tending rather to the conclusion that the testator did not intend he should share in the estate.” Wilkins v. Ordway, supra, 382; Tillman v. Davis, supra, 25.
In the case before us the testator leaves to his daughter a life estate only in the lands. Could it be presumed, that he gave to his daughter a life estate only so as to reserve the fee for the stranger to his blood ? If he intended that the husband, a stranger to his blood, should take the fee, it seems to us that he would have named him. Nowhere is he named; nowhere is he referred to, and the primary import of the words used refers to blood relations.
It is true that in this state these considerations may not be sufficient in and of themselves, to exclude the widower; but they should be entitled to some effect, and evidence of but slight weight should be sufficient to turn the scale in” determining the intention of the testator.
“ How the testator intends the word “ heirs” to be understood is a very material question, and any expression of his *150 in his will, however slight, that would throw any light upon his intention, would be laid hold of for that purpose.” Pinkham v. Blair, 58 N. H. 244. “Very little competent evidence is sufficient to show what the testator inrended.” Wilkins v. Ordway, supra, 382.
It being evident that the question here is : Whom did the testator mean and intend as the “heirs” of Etta Long, is there anything in this will, and the circumstances surrounding the testator, which either directly or by reasonable inference, will aid us in discovering such meaning ? In two items of the will, the second and eighth, the word “heirs” is used by the testator to designate certain strangers. In the second item he bounds the estate given to his daughter Kate Powers, “ on the north by the lands of heirs of Robert Morrow and Richard Steer;” and in the eighth item he bounds the property devised therein “ on the south by lands of heirs of Mary Urb.”
Now, we permitted evidence to be introduced to show who were the heirs of these parties. The testimony proves that they were the children of the parties named, and that the parents and children were neighbors of the testator for years, owning the lands alongside his, and he therefore knowingly used the word “heirs” in the sense of children — synonymously with children — to designate the children of his deceased friends, all of whom he knew. True, this was as to the children of persons other than his daughter, but we are not able to see any difference in principle, because of this, between this case and Bunnel v. Evans et al., 26 Ohio St. 409. In that case the testator devised certain real estate to his son “ through his natural life, and then to his heirs.” In referring to his own heirs, the testator referred to them as his children, “ seeming,” as the court said, “ to show that he used the words synonymously.” The son died without issue leaving a widow, and it was held, that the word “ heirs ” in the devise over of the remainder, was used, in the sense of children, and “that the son took a life estate only, with remainder to his *151 children, or issue, and not to his heirs generally, and that upon his death without issue, the devise in remainder failed, and the estate reverted to the heirs of the testator.”
Washington Hide, for plaintiff.
Marshall Woodford, for defendant.
We believe, therefore, that the testator in this case intended to give the fee to the children of Etta Long • that that is the natural and only reasonable inference to be drawn from the will and the circumstances of the case; and Etta Long having died without issue surviving, the devise fails, and the estate must go to the heirs of the testator. Decree accordingly.