WILLIAM MINOT, JR., trustee, *vs.* LUCRETIA HARRIS & others.

Suffolk. Jan. 18. — April 12, 1882. LORD, FIELD & C. ALLEN, JJ., absent.

A testator gave specific legacies to his widow and to his brother; and devised the remainder of his property, real and personal, to his widow for life, and, at her death, "to my legal heirs as the law provides, other than those hereinbefore mentioned." The testator left surviving him his widow, his brother before mentioned, a niece, the daughter of the same brother, and certain uncles and aunts. *Held,* that, after the death of the widow, the niece was entitled to the remainder.

DEVENS, J. This is a bill in equity by the trustee under the will of Sterns DeWitt Harris, to obtain the instructions of the court. The testator by his will bequeathed specific legacies to his brother, Archibald C. Harris, and his widow, who survived him, but is now deceased. He further devised and bequeathed to the widow an estate for life in all the remainder of his property, both real and personal; which remainder after her decease he gave and bequeathed "to my legal heirs as the law provides, other than those hereinbefore mentioned." It is upon the construction of this clause that the questions arise. On the death of the testator, he left surviving him his widow, the brother before mentioned, a niece, Susan L. Harris, the daughter of the same brother, and certain uncles and aunts, brothers and sisters of his father and mother, one of whom has deceased since the death of the testator.

There are three distinct claims: 1. On behalf of Archibald C. Harris, that he is entitled to the whole of this remainder under the will; or, if not, that the attempted bequest thereof is void for indefiniteness and uncertainty, and that he is entitled to the whole under the statutes of descent and distributions. 2. On behalf of the uncles and aunts, that they are entitled thereto under the description in the will, either together with the niece or to her exclusion. On behalf of the administrator of the one deceased, it is argued that the bequest was one which vested at the death of the testator. 3. On behalf of the niece, that she is entitled to the whole remainder.

We are to ascertain who, at the time of his decease, answered the description given by the testator of those entitled to take

this remainder. As a consequence of the preference of the law to vested over contingent remainders, a remainder after a life estate is ordinarily to be regarded as a vested remainder, the enjoyment and possession of which are postponed. " The rule is well settled, as a general rule of construction," says Mr. Justice Hoar in *Abbott* v. *Bradstreet*, 3 Allen, 587, " that a bequest or devise to ' heirs ' or ' heirs at law ' of a testator, will be construed as referring to those who are such at the time of the testator's decease, unless a different intent is plainly manifested by the will." See also *Childs* v. *Russell*, 11 Met. 16 ; *Dove* v. *Torr*, 128 Mass. 38. The intent appearing upon the face of the will is in accordance with and fortifies this construction, as it is seen thereby that the testator excludes the tenant for life, which would be superfluous if the vesting of the remainder were postponed until her death.

The testator does not use the words " legal heirs " in any very exact way ; but technical expressions are to be disregarded, if his meaning can be clearly understood from the provision he has made. He had but one " legal heir," but, in the phrase " legal heirs other than those hereinbefore mentioned," he seeks to apply his exclusion to him and to his wife, who, although a distributee of the personal estate, was not an heir. As his property consisted of both realty and personalty, and his reference to his brother and wife is very distinct, he must mean by this term those to whom his property would go by descent, or by the statute of distributions, according to its quality. *Sweet* v. *Dutton*, 109 Mass. 589. *Bowers* v. *Porter*, 4 Pick. 198. *Brimmer* v. *Sohier*, 1 Cush. 118.

The intention of the clause " other than those hereinbefore mentioned " is to exclude his brother from those who are to take the remainder ; and such must be deemed its effect. In order to dispose of that remainder, for it is apparent that he does not mean to remain intestate as to any portion of his property, he seeks to create a class, whom he arbitrarily terms " legal heirs " indeed, but from which the only two persons entitled to the real and personal property are excluded. To limit an estate to one's right heir, excepting A., who actually is the right heir, is inconsistent and incorrect, but it is not unintelligible ; the words may be used inartificially to describe persons who would be the right

heirs, and would thus answer the description, if A. were not in being. Were there other brothers living besides Archibald, he would certainly be excluded, and they would be well described by the language of the will. The will deals with him as if he were non-existent, by describing as heirs those who could only be such if he had deceased, and bestowing on them the remainder. In *White* v. *Springett*, L. R. 4 Ch. 300, a testator had given property to persons who, at a time fixed, would take as next of kin under the statute of distributions, but excluding the only one who was then his sole next of kin, who was a surviving grandchild. It was held that the deceased was not intestate as to the property thus attempted to be bequeathed, and that the meaning of the bequest was, "putting my surviving grandchild out of consideration as being at that time my sole or one of my next of kin, ascertain who, excluding her, my next of kin are."

On behalf of the brother of the testator, it is also contended that, if the effect of the clause " other than those hereinbefore mentioned " be to except his brother and widow from taking under the devise, the devise must fail for want of a devisee, unless the words " legal heirs " can be shown to have been used by the testator in some sense other than the usual one; and this for the reason that the brother is properly the sole heir, and also one of those excepted. At the time when the will was made, and at the time it took effect, there was no one answering the description of the devisee if the words are construed technically, the brother being excluded. Although the brother was the heir presumptive, it is possible that there could have been before the death of the testator another or others who would have answered the description, as if the brother had died, or as if the testator afterwards had had children, or had adopted them, in which cases persons answering technically the description of the devisees might have been found. But the rule is not that it must be impossible that one should be found who answers the description technically, before we can construe the words otherwise, as where a devise is made to the children of A. deceased, there being no children living at the date of the will. If it appears that there is no such person as is technically described, and, further, that the testator intended to bestow the remainder upon some one, the inference may be fairly made that he intended to

use the words in some different signification from their technical sense. Where it is only by the occurrence of subsequent events, possible and conceivable merely, that intestacy can be avoided; if the words are to be treated as used technically, it may fairly be inferred that the testator did not so use them. From the use of the words " legal heirs," as applied to the widow and brother, it is seen that he does not there use them in any very strict way, and we have a right to believe he did not so use them when he describes those who are to take after the life estate.

We have examined with care the cases cited by the counsel for the brother, by which it is sought to establish the proposition that, if there could have been any one who might have answered the description technically in the will, the words must be deemed to have been so used. *Kelly* v. *Hammond*, 26 Beav. 36, *Paul* v. *Children*, L. R. 12 Eq. 16, *In re Overhill's trust*, 1 Sm. & G. 362, and *Dorin* v. *Dorin*, L. R. 7 H. L. 568, are all cases in which the word " daughters " or " children " was held to mean legitimate "daughters " or "children." In some of them the argument is suggested that the person whose daughters or children are referred to might thereafter have legitimate children, as reinforcing the conclusion that those who were illegitimate could not take. But the English decisions quite clearly establish that the word " children " is always to be construed as if the word " legitimate " were written before it, unless the contrary shall plainly appear. The construction of the word " children " is much more liberal where the rights of those born out of wedlock are not involved, and its strict meaning not so insisted on. Thus in *Berry* v. *Berry*, 3 Giff. 134, the word "children " was construed to mean "grandchildren," although there was a child living at the time of the execution of the will. In *Fenn* v. *Death*, 23 Beav. 73, under a bequest to " children," none being living at the date of the will, the word was held to mean "grandchildren," to the exclusion of great-grandchildren.

On behalf of the brother, much reliance is placed on *Goodtitle* v. *Pugh*, 3 Brown P. C. 454. A. devised his estate for want of heirs of a prior devisee in these words: " to the right heirs of me the testator forever, my son excepted, it being my will he shall have no part in my estates, either real or personal." He

left one son and three daughters. On the question who was entitled to this estate, the Court of King's Bench, Lord Mansfield presiding, determined in favor of the daughters; but this judgment was reversed in the House of Lords, and it was held that no person took any estate under this will, either by devise or purchase. No reasons for this decision are given, and the case must be deemed, as said by Mr. Jarman, notwithstanding the high character of the tribunal which decided it, far from satisfactory. 2 Jarm. on Wills, (3d ed.) 70. It is true that, if the son had died during the lifetime of the father, leaving issue, there would have been some one competent to take strictly according to the description, and the devise would thus have been good. But a testator makes a will in view of a state of circumstances which exists, or may reasonably be expected to exist, rather than in that of remote possibilities. It is attaching too much weight to technical words, to say that they shall always have their strict meaning, and be deemed thus to have been used, if it is simply possible that there could have occurred a state of circumstances in which they could have been satisfied. In *Goodtitle* v. *Pugh*, *ubi supra*, the exception of the son from the right heirs who were to take, the strong words by which the intention of the testator that he should have none of his property was expressed, would render a decision much more satisfactory which held that the testator intended by the use of the term "right heirs," in the connection in which he placed it, to mean those who would be such if the son were treated as not living.

The present case resembles strongly some of those put *arguendo* by Vice Chancellor Kindersley in *Lee* v. *Lee*, 1 Dr. & Sm. 85. He supposes the case, among others, where A. was the only child at the date of the will, and that afterwards the testator had children born, who survived him, and would of course with A. be his next of kin at the time of his death, and that the estate was in express terms devised to A. for life, and after A.'s death to the next of kin. The remainder vests at the death of the testator, and, although A. has a life estate, he is not the less competent to take the remainder, or his share of it; but in such case, the Vice Chancellor says, "I have no doubt that the persons to take would be the persons who would have been the next of kin at the testator's death if A. did not exist."

In the case at bar, the true construction is, that the words "legal heirs," which the testator has used in their popular sense, in order to exclude those who would be entitled to the real or personal estate respectively, he also uses to describe those who are not such even in that sense, but would only be so by the non-existence, or become so by the decease, of those properly so described. The same word may have different significations even in the same sentence, if the connection in which, the words with which, and the subject to which, it is applied are different.

The next inquiry is as to those who constitute the artificial class whom the testator has sought to create. It cannot be held that the niece is to be excluded because a specific legacy is given to her father and he is excluded. She is to take, if at all, by purchase, as a devisee sufficiently described in the testator's will, and not as her father's heir or next of kin. Nor does the use of the plural "heirs," as applied to those who are to take, have any material bearing upon the further inquiry whether she is to take alone, or to do so only in a class composed of herself and the uncles and aunts, if it shall be found that she is the one described by the terms of the will, as we have construed their meaning.

It is argued that the question who are to take is to be determined without reference to the statutes of descent and distributions; and that, computing the degrees of kindred according to the rules of the civil law, uncles, aunts and niece are all in the third degree, and will take equally by the general rules of law, irrespective of the statutes referred to.

There is no express reference in the bequest to the statutes in question, in which respect the case differs from *Bullock* v. *Downes*, 9 H. L. Cas. 1. But the phrase used by the testator, " to my legal heirs as the law provides," while redundant, shows an intention to refer the subsequent disposition of his estate to the law as it exists, and of which the statutes form a part. The phrase used embraces them. The testator has excluded those who would take the property by the law but for the terms of his will. He then gives it to the class who would take in case of intestacy, were those thus excluded not in existence, and, in determining who constitute that class, reference must be had to the modifications of the common law made by statute.

The fifth clause of the Gen. Sts. *c.* 91, § 1, is as follows : " If he " (i. e. the intestate) " leaves no issue, and no father, mother, brother, nor sister, then to his next of kin in equal degree ; except that when there are two or more collateral kindred in equal degree, but claiming through different ancestors, those who claim through the nearest ancestor shall be preferred to those claiming through an ancestor who is more remote."

There being no issue, the " next of kin in equal degree " are the heirs contemplated by the testator, and they are to take " as the law provides." While those who take under the will do so as purchasers, the reference of the will to the law which would apply, were his brother not in existence, determines their rights. As thus determined, a preference is given to the niece as the descendant of the nearer ancestor, which operates to give her the remainder to the exclusion of the uncles and aunts of the testator.                         *Decree in favor of the niece.*

*C. T. Russell & W. E. Russell,* for the executrix of an uncle and certain aunts of the testator.

*Willard Howland,* for the administrator of an uncle.

*F. I. Amory,* for Archibald C. Harris.

*R. Olney,* for Susan L. Harris.