BENJAMIN H. FABENS & another, trustees, *vs.* MARIE E. FABENS & others.

Essex.  Nov. 6, 1885. — March 31, 1886.  FIELD & DEVENS, JJ., absent.

A testator, by his will, gave his homestead and furniture to his wife for her life, and provided that, after her death, they should go with the residue of his estate; appointed his two eldest sons executors and trustees; and then provided as follows : " Of all my other property, either in money, stocks, bonds, goods, vessels, real estate, or whatever it may be, is to be reserved in trust for the heirs of my children, my wife and my children to have the income of it, as follows: as fast as the children become of age they will be entitled to their portion of the income, the income to be divided into as many parts as there are heirs, counting my wife as one, . . . . and until my younger children become of age my wife to have their portion in consideration of paying all their expenses, but after being of age and receiving their portion, should they live with their mother, they must pay their portion of expenses, as their mother will not have sufficient for the whole expenses."  He also gave to the trustees full power of investment, and of sale and reinvestment, of both real and personal property.  By a codicil to the will, the testator expressed the wish that, if there should be any vacancy among the number of executors and trustees named in the will, his wife should be appointed to fill it; that his younger son, on becoming of age, should also be appointed executor and trustee; and that his executors and trustees might be exempt from giving sureties on their official bonds.  The testator left a widow and four children, three sons and a daughter, the last being unmarried.  One of the elder sons died intestate, leaving a widow and three minor children.  The property in the hands of the trustees was all personal property.  *Held,* that the distribution of the whole estate was not to be postponed until the death of the widow and of all of the testator's children; and that the heirs of the deceased son of the testator, and not his widow, who was appointed administratrix of his estate, were entitled to receive a distribution of that portion of the estate of which he had received the income.

BILL IN EQUITY, by the trustees under the will of Charles H. Fabens, to obtain the instructions of the court as to the construction of the will.

The bill alleged that the testator died in 1869, leaving a widow, Marie Euphrasie Fabens, and four children, Charles Eugene Fabens, Leonide Euphrasie Fabens, and the plaintiffs, Benjamin H. Fabens and Auguste Jerome Fabens; and that he left a will, executed on June 6, 1867, which was duly admitted to probate, and which was as follows :

" I give my house in Chestnut Street, with the land belonging to it and all my household furniture, to my wife, to have and hold for her lifetime; after her death it is to go in with all my other property as hereafter mentioned.

" I appoint as executors and also as trustees Mr. Joseph Hardy Towne and my sons Charles Eugene Fabens and Benjamin Henry Fabens, with the wish that Mr. Towne shall be the leading man of the three.

" Of all my other property, either in money, stocks, bonds, goods, vessels, real estate, or whatever it may be, is to be reserved in trust for the heirs of my children, my wife and my children to have the income of it, as follows : as fast as the children become of age they will be entitled to their portion of the income, the income to be divided into as many parts as there are heirs, counting my wife as one, (thus to-day there would be five heirs, my wife and four children,) and until my younger children become of age my wife to have their portion in consideration of paying all their expenses, but after being of age and receiving their portion, should they live with their mother, they must pay their portion of expenses, as their mother will not have sufficient for the whole expenses.

" I wish to give my brother Benjamin Fabens five thousand dollars, to be taken out of the money for my life insurance, as he has been very faithful in all his business connections with me, and he will probably be some time without business, but I expect him to aid and assist with his advice about closing my business ; this to be paid in six months or before. All property that is not invested the trustees can invest as they think proper, and can also sell and reinvest any of the property, stocks, real estate, or any other."

A codicil to the will, dated December 17, 1868, was as follows : " Should there be any vacancy among the number of executors and trustees named in my will, I wish my beloved wife Marie Euphrasie Fabens should be appointed to fill the vacancy, and also I wish my son Auguste Jerome Fabens on his becoming of age to also be appointed executor and trustee, and I wish that my executors and trustees may be exempt from giving sureties on their official bonds."

The bill further alleged the following facts :

Charles Eugene Fabens died on January 22, 1885, intestate, leaving a widow, Bessie H. Fabens, who has been appointed administratrix of his estate and guardian of his three minor children, Marie Euphrasie, Bessie Dyer, and Eugene Jerome.

The widow and the other three children of the testator are all living. The children of the testator are all of full age, and Leonide Euphrasie is unmarried.

The plaintiffs hold the residue of the testator's estate, consisting wholly of personal property, and are ready to execute the trusts of his will; but by the death of Charles Eugene Fabens conflicting claims have arisen.

Bessie H. Fabens contends that it is the duty of the plaintiffs to pay over to her, as administratrix of the estate of Charles Eugene Fabens, one fifth of the entire residue in their hands.

The widow of the testator and Leonide Euphrasie contend that, so long as the widow or any of the children of the testator are living, the trust fund is to be kept together, and only the income thereof paid over to the widow and to the children or representatives of deceased children of the testator; and that Charles Eugene's share of the income only is to be paid over to those entitled in remainder after his death, and the principal is to remain in trust.

The questions raised by the bill are as follows:

First. Whether, upon the death of said Charles Eugene, his share of the principal of said trust fund is payable to those who may be entitled in remainder, or whether the trust fund is to be kept undistributed until the death of the widow and of all the children of the testator.

Second. Whether, if said share of principal be now severable and payable, it is payable to the administratrix, or to the minor children, or to the widow and children of said Charles Eugene Fabens.

Third. Whether, if the trust fund is not divisible until after the death of the widow and all the children of the testator, the income thereof belonging to said Charles Eugene's share is payable to his administratrix, or to his children, or to his widow and children in equal shares.

The case was heard by *W. Allen*, J., and reserved for the consideration of the full court.

*C. W. Richardson*, for the widow and daughter of the testator.

*G. R. Swasey*, for the minor children of Charles E. Fabens.

*G. Putnam*, for the widow of Charles E. Fabens.

C. ALLEN, J. The first question which we have considered is, whether the whole estate is to be kept together until the death of the widow and of all the children of the testator, or whether, upon the death of any child, his or her heirs shall at once receive a distribution of that portion of the estate of which the child had received the income. It does not appear that any injury will result to the widow or to any of the surviving children from making such distribution, and none has been suggested by counsel. The widow will still receive the income of one fifth of the whole property, as she does at present. The advantage, if any, to be derived from keeping the whole estate together, with a view to the possibility of making more advantageous investments, does not appear to have been specially in the testator's mind, and is at best but conjectural. The phraseology of the will might lead to the suggestion that the testator did not wish his widow, or either of his children, in any event, to become the owner of any portion of the principal of his estate, and that they may become so, as heirs of a child who may die without leaving issue, in case there is to be an immediate distribution to the heirs of such child upon his or her decease. For instance, the daughter Leonide is now living and unmarried. She is entitled to one fifth part of the income. If she were to die now, unmarried, and if her share should be distributed at once, it would of course go to her mother as heir; and if her mother were to die first, then the share of Leonide would go to her brothers, including the children of Charles by right of representation. If it were plain that the testator did not wish this result to happen, that would be a reason for holding that the whole estate should be kept together; but, so far as the purpose of the testator can be divined from his somewhat meagre expression of it, we think it equally rational to hold that he simply meant that no child should spend or dispose of his own share so as to cut off his heirs at law; but that he did not mean to cut off the right of the widow or children to take as heirs at law of any child who might die without leaving issue. It might also be suggested that, if the heirs of a deceased child are entitled to the share of such child immediately upon his or her death, successive distributions may become necessary; for instance, that, if the widow should die shortly hereafter, the children

of Charles would then be entitled to one fourth part of the one fifth of the estate the income whereof is now paid to her; and that, if another child should then die without leaving issue, the children of Charles would then be entitled to a still further distribution of principal. These considerations, however, only affect the convenience of managing the trust, and are outweighed by those in favor of making as early a distribution of the estate as may be consistent with the expressed intention of the testator. Taking the whole will and codicil together, they indicate on the part of the testator a marked affection for and confidence in his wife and children, so that it is not to be said of him that he showed more care for his remote descendants whom he had not seen, than for his wife and children with whom he was living ; and, on the whole, we find no sufficient reason for holding that the share of a deceased child must be held in trust until the death of the testator's widow and of all of his children.

It remains to determine who shall take under the gift to " the heirs of my children." It is contended, in behalf of the widow of the deceased son, that these words should be read in a double sense, so as to mean the heirs at law in relation to the real estate, and those persons who would be entitled under the statute of distributions in relation to the personal estate ; as was done in *Keay* v. *Boulton*, 25 Ch. D. 212, and *Wingfield* v. *Wingfield*, 9 Ch. D. 658. No general rule can be stated under which all the decisions can be classified. But in general, where there is a gift to a person or his heirs, the word " heirs " denotes succession or substitution ; the gift being primarily to the person named, or, if he is dead, then to his heirs in his place. In such cases, it has often been held that the word " heirs " should be construed to mean the persons who would legally succeed to the property according to its nature or quality ; and that the heirs at law would take the real estate, and the next of kin or persons entitled to inherit personalty would take the personal estate. Such were the cases, amongst others, of *Keay* v. *Boulton* and *Wingfield* v. *Wingfield*, above cited, of *Vaux* v. *Henderson*, 1 Jac. & W. 388, and of *Doody* v. *Higgins*, 9 Hare, App. xxxii. But where the gift is directly to the heirs of a person, as a substantive gift to them of something which their ancestor was in no event to take, this element of succession or substitution is

wanting, and the heirs take as the persons designated in the instrument to take in their own right; and in such cases the courts have usually held that the word " heirs " must receive the meaning which it bears at common law, as the persons entitled to succeed to real estate in case of intestacy. *De Beauvoir* v. *De Beauvoir*, 3 H. L. Cas. 524. *Forster* v. *Sierra*, 4 Ves. 766. *Swaine* v. *Burton*, 15 Ves. 365. *Mounsey* v. *Blamire*, 4 Russ. 384. This distinction was recognized in this State in *Clarke* v. *Cordis*, 4 Allen, 466, 480, where the court, in speaking of the word "heirs" as used in the will then under consideration, said: " It was not intended to denote succession, that is, to vest the estate in the legatees as successors of or substitutes for the sons of the testator, so that they would take the same estate in nature and quality as that which would have come to them by descent. They are to take by force of the will as purchasers. The word is used to designate the persons who are to take the real and personal estate as independent objects of the gift. It is therefore to be interpreted as a mere term of description of a class of persons who . . . . are to take the estate."

This doctrine, if applied to the will now before us, clearly leads to the result that the word " heirs " is to be understood in its strict sense. The life estate is for the wife and children of the testator, and the remainder is for the heirs of his children. A child of the testator cannot, by any possibility, take in the first instance that which is given to the heirs of such child. The heirs of the children do not take in their parents' place, by way of substitution to the same estate, but they take an independent, substantive gift of the whole property, subject to a life interest therein which is given to the testator's wife and children. There is nothing in the will which shows any intention that the real estate should go in one direction and the personal in another. The provision is a single one, and is found at the beginning of a separate paragraph. Rejecting the word " Of " as superfluous, the language is: " All my other property, either in money, stocks, bonds, goods, vessels, real estate, or whatever it may be, is to be reserved in trust for the heirs of my children." After this follow the provisions for giving the income or life estate to his wife and children. This language looks

rather to a wish to have all the property finally go in the same direction. But without speculating too much as to what may have been the testator's actual intention, whether he meant that, if one of his sons should die leaving a wife, but no children, or if his daughter should die leaving a husband but no children, such wife or husband respectively should or should not take under the statute of distributions, it is sufficient to say that we think the weight of authority and the better reason favor the giving of a strict construction to the word " heirs," in the present will. Such also has been the tendency of most of the decisions in this Commonwealth. See *Merrill* v. *Preston*, 135 Mass. 451 ; *Clarke* v. *Cordis, ubi supra ; Lombard* v. *Boyden,* 5 Allen, 249, 254–256 ; and *Loring* v. *Thorndike*, 5 Allen, 257, 269.

It follows, that one fifth of the trust fund should be paid to the heirs at law of Charles E. Fabens.

*Decree accordingly.*