GEORGE WHITE *vs.* ROSALBA C. STANFIELD & others.

Suffolk.    January 30, 31, 1888. — March 5, 1888.

Present: MORTON, C. J., DEVENS, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Will — Devise — Trust — Heirs at Law — Administrator.*

A testator devised a farm, being the only real estate described in his will, to a son, and created several independent trust funds, one of which was for the benefit of his son, directing the trustee to "invest the same in such manner as he shall deem safe and judicious," and to "pay over the net income" to him "during his natural life and the principal of said fund on his death to his heirs at law." Each beneficiary was to receive interest out of the estate, the first payment of which was to be in advance, until his trust fund was formed, and the fund for the benefit of the son was always invested in personal securities. *Held*, that the term "heirs at law" meant next of kin, or persons entitled under the statute of distributions relating to personal estates.

The administrator of a beneficiary for life under a trust is entitled, under the Pub. Sts. c. 136, § 25, to that portion only of the income of the fund which accrued between the last payment to the beneficiary and his death.

BILL IN EQUITY, filed January 14, 1887, by George White, trustee under the will of Henry Robinson, against Rosalba C. Stanfield, Anna E. Robinson, Dora Hidell, and Clifford Brigham, administrator of the estate of Edward Gray Robinson, for instructions as to the disposition of a trust fund.

The bill alleged that Henry Robinson made a will, dated October 14, 1848, which was, with the exception of parts merely formal, as follows :

"I give to my wife Isabella Robinson all my wearing apparel household furniture horses, carriages, plate, watches, and jewelry, and also my library.

"I give to my son Edward Gray Robinson, my farm in the State of Michigan, to have and to hold the same to him his heirs and assigns to his and their use in fee simple.

" I give to my daughter, Mrs. Rosalba Cecilia Stanfield the sum of fifteen thousand dollars, and if her husband Mr. M. M. Stanfield shall at my decease be indebted to me by note or otherwise either solely or jointly with others, then this bequest shall be applied to the payment of any such indebtment of said M. M. Stanfield.

" I give to William W. Stone and Thomas Lamb, both of said Boston, the sum of fifty thousand dollars to be held by them in trust for the benefit of my said wife during her natural life. They shall invest the same in United States six per cent stock payable in eighteen hundred and sixty-eight if the same can be done on reasonable terms, if it cannot, then in such other manner as they shall judge safe and judicious, and they shall pay the net income of said fund, to my said wife in equal quarter-yearly payments during her natural life for her sole separate and individual use, and upon her decease the principal of said fund shall be disposed of as part of the residue of my estate. The provision which I have herein made for my said wife shall be in lieu and in full satisfaction of her right or claim to dower or thirds from or out of my estate.

" I give to the said Stone and Lamb the further sum of twenty thousand dollars to be held by them in trust for the benefit of my adopted daughter Rosalla Peale (the daughter of the late Rembrandt Peale) during her natural life. They shall invest the same in such manner as they shall judge safe and judicious, and shall pay the net income, of said fund to said Rosalla, in equal quarter-yearly payments during her natural life for her sole separate and individual use, free from the control or interference of any husband with whom she may at any time intermarry, and such payments shall be made only on her own individual receipts or orders, executed on or after the days when they shall respectively become payable and upon her decease the principal of said trust fund shall be disposed of as part of the residue of my estate.

" I give to the said Stone and Lamb the further sum of ten thousand dollars, to be held by them in trust for the benefit of my said daughter Rosalba Cecilia Stanfield during her natural life. They shall invest the same in such manner as they shall judge safe and judicious, and shall pay over to her the net income

of said fund in equal quarter-yearly payments during her natural life, for her sole separate and individual use, free from the control or interference of her present husband or any husband with whom she may at any time hereafter intermarry, and such payments shall be made only on her own individual receipts or orders, executed on or after the days when they shall respectively become payable ; and upon her decease the said trustees shall pay over and distribute the principal of said trust fund to and among her lawful issue the lawful issue of any deceased child of my said daughter taking their parent's share. But if my said daughter shall leave no lawful issue living at the time of her death, then the said trustees shall pay over and distribute the principal of said trust fund to and among her heirs at law.

" I give to the said Stone and Lamb the further sum of fifteen thousand dollars, to be held by them in trust for the benefit of my three grandsons Henry Hugh and George the sons of the said Rosalba Cecilia Stanfield. The said trustees shall invest the same in such manner as they shall judge safe and judicious and they shall expend the net income of the said fund quarter-yearly for the maintenance and education of my said grandchildren until they shall respectively attain the full age of twenty-one years, and as each one attains that age they shall make over to him one equal third part in value of the principal of said fund, but if either of them shall die under that age his share shall go in equal parts to the survivors or the whole to the survivor if only one shall live to reach that age, such additional share or shares not to be paid to him or them until he or they respectively shall reach the said age of twenty-one years, provided however that if my said daughter should have other children born to her they shall have the benefit, in equal proportions among themselves, of the share or shares, of any one or more of my said three grandsons who may die under the age of twenty-one years in the same manner that such deceased grandson or grandsons would have if living, but if only one of my said three grandsons should live to become twenty-one years of age, and only one after-born child of my said daughter should live to reach that age, then the principal of said trust fund shall be divided between them equally, their respective shares to be paid them when they become twenty-one years of age. But if no child of my said daughter shall live to become twenty-one

years of age, then the principal of said fund shall be disposed of as part of the residue of my estate.

" I give to my nephew John Henry Towne of Philadelphia the sum of twenty thousand dollars to be held by him in trust for the benefit of my son Charles Robinson during his natural life. He shall invest the same in such manner as he shall judge safe and judicious, and shall pay over the net income of said trust fund to my said son Charles in equal quarter-yearly payments during his natural life, and the principal of said fund upon his decease to his heirs at law.

" I give to said John Henry Towne the further sum of ten thousand dollars to be held by him in trust for the benefit of my son William Gwynn Robinson during his natural life. He shall invest the same in such manner as he shall judge safe and judicious, and shall pay over the net income of said trust fund to my said son William Gwynn in equal quarter-yearly payments during his natural life, and the principal of said fund upon his decease to his heirs at law.

" I give to said John Henry Towne the further sum of ten thousand dollars to be held by him in trust for the benefit of my son Edward Gray Robinson aforenamed during his natural life. He shall invest the same in such manner as he shall judge safe and judicious and shall pay over the net income thereof to my said son Edward Gray in equal quarter-yearly payments during his natural life, and the principal of said fund on his decease to his heirs at law.

" I give to the parties who may be entitled to the income of the several trust funds aforesaid, to each of them a sum equal to one quarter-year's interest in advance on their respective funds, said sums to be paid to them as soon as may be after my decease, with interest on said sums from the day of my death until paid. It is also my intention that the said parties shall receive full interest on the amounts of their respective funds at the expiration of each quarter after my decease, and therefore until the aforenamed trustees shall have received from my executors the full amounts which they will be entitled to claim for the establishment of the said several funds, I direct my executors at the expiration of every three months after my decease to pay to each of the said parties any deficiency there may be in the

income of their respective funds to make up full interest on the respective sums which I have directed shall be invested for their benefit.

"I also give to the aforenamed Stone and Lamb the further sum of twenty-five thousand dollars, to be held by them in trust for the benefit of my brother, Mr. John Robinson, and my sister Mrs. Hannah Ganott, both of Coventry, England, during their joint lives. The said trustees shall invest the said sum in such manner as they shall judge safe and judicious, and during the joint lives of my said brother and sister they shall pay over to my said brother two thirds of the net income of said trust fund, and to my said sister one third part of said net income, in equal half-yearly payments, and upon the decease of my said brother two thirds of the principal of said trust fund, and upon the decease of my said sister one third part of the said principal shall be disposed of as part of the residue of my estate, and upon the decease of either of them the remaining two thirds or one third part of the same trust fund, as the case may be, shall continue to be held in trust by the said trustees, and the net income thereof shall be paid to the survivor of my said brother and sister, during his or her natural life. All sums to be so paid to my said sister are to be for her sole separate and individual use free from the control or interference of her present husband or any husband with whom she may hereafter intermarry, and shall be paid only on her individual receipt or orders, executed on or after the days when the several sums to be paid her shall become severally due and payable.

"It is my will that neither of the said trustees shall be required to give bond for the faithful discharge of the duties of the said trusts or either of them. They shall have authority from time to time to change the mode of investment of the several trust funds committed to them respectively as they shall judge judicious, they shall not either of them be accountable for any loss, or diminution in value, which may happen or accrue to either of the said funds by reason of any error of judgment on their part. The said Stone or Lamb shall neither of them be accountable for the acts or doings of the other, and each of the said trustees shall be accountable only for his own actual receipts, and his own wilful defaults.

" All the rest, residue, and remainder of the property and estate of which I may die seised or possessed, including the reversions of the several trust funds aforesaid, which I have directed shall be disposed of as part of the residue of my estate, I give, devise, and bequeath to my son, George Mosher Robinson, to have and to hold the same to him, his heirs, executors administrators and assigns to his and their use and behoof forever, provided however, and it is hereby declared that this bequest is contingent as to the several reversions of the said trust funds and as to each of the said reversions, the same shall not vest in the said George unless he shall survive the party or parties upon whose decease the said reversion shall fall into the residue of my estate, and if the said George shall not be living when any one or more of the said reversions shall fall in, then I give and bequeath such reversion or reversions to the lawful issue of said George, who may be then living, the lawful issue then living of any deceased child of the said George taking their parent's share.   But if neither my said son George nor any lawful issue of said George shall be living at the time of the falling in as aforesaid of any one or more of the said reversions, then from the amount of such reversions, I give the sum of ten thousand dollars to my adopted daughter the aforenamed Rosalla Peale, the sum of ten thousand dollars to my nephew Henry Robinson of Glasgow Scotland, son of my brother John Robinson aforenamed.   The sum of ten thousand dollars to my said wife Isabella Robinson, and the sum of ten thousand dollars to each of my three grandchildren, Henry, Hugh and George sons of my aforenamed daughter Rosalba Cecilia Stanfield, making in the whole, the sum of sixty thousand dollars thus charged upon the said reversions in case of the death of my said son George and failure of his issue as aforesaid, and if there shall afterwards be any surplus, remaining of said reversions, or either of them, I give the same to my nephew the aforenamed John Henry Towne.   But if there shall not be a sum sufficient to pay said six bequests in full of ten thousand dollars each, then they shall be abated equally, and in case any one or more of the said seven legatees shall die before the happening of the contingencies which would entitle them to receive the said sums so bequeathed to them, then it is my will, that

his, her, or their legal representatives whether legatees or heirs at law shall stand in his, her, or their stead in all respects and be entitled to demand and receive the said several sums in the same manner that he she or they would if living and if by reason of depreciation in value or from any other cause, there shall not be realized from my estate, an amount sufficient to pay in full the legacies herein given and to establish in full the several trust funds which I have directed shall be created, and leave besides a surplus of ten thousand dollars, for my son George Mosher Robinson as residuary legatee, then and in such case, a ratable abatement shall be made from the said several trust funds, except the fund for the benefit of my wife, (which is at all events to be made up to the full amount of fifty thousand dollars,) to such extent as may be needful to secure to my said son George as residuary legatee the full sum of ten thousand dollars. And if such abatement shall be made, from the said trust funds, then upon the death of my said wife and my said adopted daughter, Rosalla Peale, or either of them, the principal of their respective trust funds shall be appropriated as far as need be to make up and restore to the several funds so reduced the amounts so abated, from them respectively with interest thereon from the time of my death, before the said principal of said funds, or either of them, or any part of the same shall be , paid to the person or persons who may then under the foregoing provisions be entitled to receive the same."

The bill also alleged, that this will was duly admitted to probate on November 27, 1848 ; that John Henry Towne was duly appointed trustee under the will on December 17, 1849 ; that as trustee he received the sum of $10,000 in shares of stock and cash from the executor of the will, and invested it in personal securities, paying the income thereof to Edward Gray Robinson as directed by the will; that Towne died in April, 1875, and the plaintiff was on January 10, 1876, duly appointed trustee under the will; that the plaintiff as such trustee received from the executor of Towne the capital of the trust fund in personal securities and cash; that he had invested it in mortgages, and it amounted to the sum of $11,420.25, the income of which had been paid to Edward Gray Robinson each year during his life, the last payment having been made to him on July 1, 1886 ; that Edward

Gray Robinson died on October 16, 1886, leaving a widow, Anna E. Robinson, a sister, Rosalba C. Stanfield, and a niece, Dora Hidell; that Clifford Brigham had been appointed administrator of the estate of Edward Gray Robinson; and that these were the only persons who claimed to be heirs or legal representatives of Edward Gray Robinson, or entitled to receive the fund.

The bill further alleged, that Brigham, as administrator, claimed the whole of the trust fund, both principal and interest; that the wife claimed the whole of the trust fund, except the income accruing between July 1 and October 16, 1886; and that the sister and the niece each claimed one half of the fund, except the income accruing between the same dates.

The prayer of the bill was that the plaintiff might be instructed as to what parts of the fund, if any, the defendants were entitled.

The answer of the defendant Brigham alleged that he claimed that the income of the trust fund accruing between July 1, 1886, and October 16, 1886, should be paid to him as personal property of Edward Gray Robinson of which he died intestate, " and as to the principal of said trust fund, this defendant submits to such order or decree as to this honorable court shall seem meet and proper."

The answer of the wife admitted the allegations of the bill, " excepting that she claims to receive from complainant only one half of the principal of said trust fund."

The answers of the sister and niece each admitted the allegations of the bill.

Hearing upon the bill and answers before *C. Allen*, J., who reserved the case for the consideration of the full court.

*J. A. Loring*, for the wife.

*H. D. Chapin*, for the sister.

*W. C. Loring*, for the niece.

*G. B. Ives & C. Brigham*, for the administrator, filed a brief.

DEVENS, J. The case at bar has been argued somewhat at cross purposes by the counsel who have respectively represented before the court, on the one side, the widow, and on the other, the sister and niece of Edward G. Robinson.

The claim as made on behalf of the widow is, that the fund of $10,000 of which the testator's son Edward G. was to have

the income during life is to be treated as a gift of personal property upon his decease to those who were then his next of kin or his distributees, and that by the words " to his heirs at law " the testator intended to designate those who would have taken as the distributees of his personal property had the fund actually been the property of Edward G. at his decease ; and thus, as he left a widow, but no issue, she is entitled to one half thereof as his personal property, such being the law of Massachusetts when the will was made and when the testator died.    By the law as it now exists, the widow in such case is entitled to $5,000 of the personal property of the husband and one half of the excess above $10,000.    These sums amount together to the sum of $5,710.12, which is the same amount as one half of the personal property ; so that this change in the law as applied to the case at bar makes no difference in the amount to be received by the beneficiary, if the claim on her behalf is maintained.

On behalf of the sister and niece it is urged that the words " heirs at law " cannot be interpreted as meaning next of kin or distributees ; that they apply solely to the realty, and designate as those who are to take the fund in controversy those who at the decease of Edward G. were entitled to estates of inheritance in his real property ; that by the law in force when the will was made and when the testator died the widow did not inherit any part of her husband's real estate, but it would have been divided between his sister and his niece, so that she cannot have been designated as an " heir at law "; and that although by the law in force (St. 1880, c. 211) when Edward G. died his widow would have been entitled to his real estate to the amount in value of $5,000 and an estate for life in his remaining real estate in lieu of dower, the will must be construed by the law which prevailed when the will became operative.    It was further urged, that even if this is not so, and if the present law is to govern in determining what persons come within the meaning of a gift to " heirs at law," the St. of 1880, c. 211, did not make the widow in any proper sense an heir of her husband, as it did not cast upon her an estate of inheritance in his lands upon his decease, but gave her only a right to a certain provision to be made therefrom.

While it has not been urged on behalf of the widow that she was entitled to take as one properly designated as an heir at law

by virtue of the statute of 1880, but her claim has been rested upon the ground of her rights to which she would be entitled as distributee in the personal property of her deceased husband, and while the amount which she would receive in the two events would differ, it is to be presumed that this claim might be made on her behalf if that originally made by her is rejected. It does not appear by the bill for instructions and the answers thereto to have been distinctly set forth, but these are of course susceptible of amendment, and it might be necessary to consider it unless the widow shall be found entitled on the ground first taken on her behalf.

An examination of the will leads to the conclusion that the testator intended that the sum of $10,000 should be dealt with as personal property during the lifetime of his son, and that it should be distributed as such at the decease of the son, unless the use of the words " heirs at law " in describing those to whom it is to pass shall compel us to hold otherwise. The only real estate described in the will of the testator was a farm in Michigan, which he devised to Edward G. The instrument contains several distinct and independent trusts, which consist of funds to be held for the benefit during life of certain *cestuis que trust*, and which at their decease respectively are variously disposed of.

The trust for the benefit of Edward G. was the sum of $10,000, to be held by the trustee during the natural life of Edward G., to pay to him the income thereof, and " to pay over . . . the principal of said fund on his decease to his heirs at law." The fund was to be invested by the trustee as he might think safe and judicious, but there is no suggestion that it should be invested in real estate, nor do we find anything looking to its division as such. The parties entitled to the income of the various funds were to receive " a sum equal to one quarter-year's interest in advance on their respective funds," and, as there might be delay after the decease of the testator in the formation of such funds, the beneficiaries for life were until that time to receive quarterly full interest on the amount of their respective funds. The fund created for Edward G. consisted of personal securities, and has always remained thus invested. It is fairly to be inferred from the direction that the fund should be paid over on the decease of

Edward G., from the fact that interest is to be paid on an equal amount until the fund is formed, and from the other circumstances of the case, that it was to be kept and dealt with as personal property.

Where, even in the case of a gift of personal property at the decease of one who was to enjoy a life income therefrom, it was clear that the testator intended that "heirs at law" strictly so termed should take the property from which such income was drawn, they would so take, not as such, but as persons whom the will described, and who might be described by the class to which they belonged as well as by their names. Where a gift of the income of personal property has been made, and then such property is bequeathed to "his heirs," or his "heirs at law," many English decisions have held that those who are strictly so must take to the exclusion of the next of kin or distributees. *Smith* v. *Butcher*, 10 Ch. D. 113. *Low* v. *Smith*, 2 Jur. (N. S.) 344. *De Beauvoir* v. *De Beauvoir*, 3 H. L. Cas. 524.

Such has not been so clearly the tendency of the decisions in Massachusetts, which have paid more regard to what seemed the intention of the testator, and, ascertaining this, have endeavored to follow it. While words must certainly receive the sense which they ordinarily have, yet it may be shown by the context that the testator has sought to impress upon them a different sense, and if so, this will then be followed. *Minot* v. *Harris*, 132 Mass. 528. In *Loring* v. *Thorndike*, 5 Allen, 257, where a bequest of personal property was made by a codicil in lieu of a devise of real estate to the same person in the will, and this was so expressed in the codicil, it was held that the intention of the testator was clearly indicated that the word "heirs" as applied to the personal property should bear its legal sense. But in *Houghton* v. *Kendall*, 7 Allen, 72, where the gift was of a sum of two thousand dollars at the decease of one entitled for life to the income thereof, it is said: "In this Commonwealth we find no authority which would conflict with the adoption of the construction which seems to us reasonable, that when the word 'heirs' is used in a gift of personalty, it should primarily be held to refer to those who would be entitled to take under the statute of distributions, and to indicate that they should take in the same manner and in the same proportions as if it had come to them as

intestate estate of the person whose ' heirs ' they are called."
Upon this ground the case is decided. To the same effect is
*Sweet* v. *Dutton*, 109 Mass. 589.

The sister and the niece rely much on the cases of *Merrill* v.
*Preston*, 135 Mass. 451, and *Fabens* v. *Fabens*, 141 Mass. 395.
In *Merrill* v. *Preston*, the will in terms authorized " the fund to
be invested in real estate, and looked to its possible division in
that form," although it was personalty when it was handed over.
But it is said, " If the deed before us had contemplated a trust
of personalty only, there would have been a stronger, although
not necessarily a conclusive, argument in favor of construing an
ultimate limitation to heirs in a sense adapted to the mode in
which personal property devolves." *Fabens* v. *Fabens* belongs
to the same class of cases as *Clarke* v. *Cordis*, 4 Allen, 466, and
*Lombard* v. *Boyden*, 5 Allen, 249, in which it is held that where
real and personal estate are blended in a single provision, and
the rents, profits, dividends, and income are to be paid to one for
his life, and at the death of the life tenant the trustee is to con-
vey and pay over the same to his legal heirs, there being no indi-
cation that more than one class is intended, or that the two kinds
of property are to go in different directions, the whole property
will go to those who are technically described as " heirs." In
*Fabens* v. *Fabens* the trust property devised and bequeathed
consisted of real and personal estate, the life income of which
went to the wife and children of the testator. The language of
the court is: " The heirs of the children do not take in their
parents' place, by way of substitution to the same estate, but they
take an independent, substantive gift of the whole property, sub-
ject to a life interest therein which is given to the testator's wife
and children. There is nothing in the will which shows any in-
tention that the real estate should go in one direction and the
personal in another. The provision is a single one, and is found
at the beginning of a separate paragraph."

In the case at bar those who are to take after the life estate do
not take by way of succession or substitution, but an independent
substantive gift; but that which they are to take is. personal
property, intended to be kept as such, and thus to be paid over
at the decease of the life tenant, and notwithstanding the use of
the words " heirs at law," it should be paid to his distributees,

and one half thereof to his widow, as a person so entitled under the statute. The words do not appear to have been used technically, nor would it have occurred to a testator, unless his attention had been called to it by legal advice, that he was in danger by use of them of sending this property in a different direction from that it would have taken if it had actually been the property of his son. Indeed, his object was not, we think, so much to make an additional bequest after providing carefully for the income of his son for life, as to relinquish the property from which it was derived to the disposition of the law. It is said in *Minot* v. *Harris, ubi supra,* that " the phrase used by the testator," who had bequeathed his property to his wife for life, and at her " decease 'to my legal heirs as the law provides,' while redundant, shows an intention to refer the subsequent disposition of his estate to the law as it exists, and of which the statutes form a part." Where a testator establishes a fund consisting of personal property for the purpose of providing an income for life for his son, and this is apparently his principal object, and when after his son's decease he directs it to be paid over to the son's " heirs at law," his intention is not so much to make a bequest of it, or direct further how it shall go, as it is to surrender the disposition of the fund, as if it were actually the son's, to those upon whom the law would in such case devolve it.

As in our view the fund is to pass as personal property, it will be unnecessary to consider what would be the character of the widow's estate therein if treated as real property.

While the bill sets out that the administrator of Edward G. Robinson claims the whole estate, this was not seriously contended. He is entitled to that portion of the income of the fund which accrued between July 1 and October 16, the day of the life tenant's death. Pub. Sts. c. 136, § 25. *Adams* v. *Adams,* 139 Mass. 449.

The widow as distributee of the personal property is entitled to one half the trust fund, and the sister and niece respectively to one quarter.                     *Instructions accordingly.*