BOSTON SAFE DEPOSIT AND TRUST COMPANY *vs.* THOMAS BLANCHARD, JR., & others.

Suffolk. March 15, 1907. — June 18, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Devise and Legacy. Descent and Distribution. Words,* "Own right heirs."

At the hearing on a bill in equity by the trustee under a will to determine who was entitled to share in the final distribution of the trust fund, it appeared that the testator was seventy-five years of age when he executed the will and had been married three times, the last marriage having occurred eight months before he made his will and being to a woman thirty-one years of age, that when he made his will he had no issue living excepting a daughter by his second wife who was a widow and *non compos mentis.* The clause of the will relating to the trust, after making elaborate and painstaking provision for the support of his daughter during her life and of her issue, if any, after her death, for the support of his wife during her life and of her issue by the testator, if any, after her death, provided as follows: ". . . and upon the decease of such survivor [of the wife and daughter] leaving issue to distribute the principal of the trust fund among my issue; and if on the decease of such survivor there should be no living descendant of mine, then to distribute said principal among my own right heirs, unless my said adopted son, Thomas Blanchard Jr. or some issue of his, be then living, and in that case to pay over to him if living, or to his issue, if he be not then living, one half part of said principal fund." *Held,* that by the provision quoted the testator intended to create a contingent interest and not one which should vest at the time of his death, and that by the words "my own right heirs" he intended to designate those persons who would have been his heirs had he died immediately after the death of the last surviving life beneficiary.

Where a will creates a contingent interest which on the termination of a life estate is to vest in persons described as the testator's "own right heirs," the testator in effect has incorporated into his will the statute providing for the descent of the real estate of an intestate as it may be at the time of the happening of the contingency.

BILL IN EQUITY by a trustee under a will for instructions, filed in the Supreme Judicial Court for the county of Suffolk September 15, 1906.

At the hearing before *Rugg*, J., the case was reserved upon the pleadings and an agreed statement of facts for consideration and determination by the full court.

Besides the facts stated in the opinion, it appeared that the testator, at the time of making his will, had been married three times and that there never had been any issue by any of his marriages except the daughter mentioned in the opinion, who was a child by the second marriage. His third marriage, which occurred about eight months before he made his will and about eleven months before his death, was to a woman thirty-one years of age, he being seventy-five at the time.

*C. C. Barton, Jr.*, for the defendants Mabel B. Emery and others.

*G. R. Swasey*, for Charlotte I. Blanchard, executrix, submitted a brief.

*S. H. Tyng*, for other defendants, submitted his case without argument.

*W. D. Whitmore, Jr.*, for the plaintiff, was present but did not address the court.

RUGG, J.    This is a bill in equity for instructions as to the persons to whom shall be paid a trust fund under the will, executed on January 12, 1864, of Thomas Blanchard, who died at the age of seventy-six, on April 15, 1864. The testator left a wife, but no issue by her, and a daughter by a former marriage. The daughter was a widow, childless, and *non compos mentis* at the time the will was executed, and continued so until her death in 1867. The testator left no other descendant. His widow subsequently remarried, and died in 1905. The material provision of the will is :

" I give, devise and bequeath to my nephew Stillman S. Blanchard of Boston all the rest and residue of my estate, real and personal, in trust to invest the same, and to keep the same safely and securely invested, and after paying taxes, insurance and all other charges, to pay over the net income thereof, one half to my wife, and the other half to, or for the benefit of, my daughter, as hereinafter directed, during the joint lives of the two ; and if my daughter shall die during the life of my wife, and leave issue, then to pay to said issue one half of said net income, and the other half to my wife during her life ; and if my

wife shall die during the life of my daughter, and leave issue by me, then to pay to said issue said one half of said income, until such issue shall attain the age of twenty-one years, then to pay to him or to her one half of the principal of the fund; and in case my daughter shall die during the life of my wife, without leaving issue; or in case she leave issue, and such issue shall not survive my wife; or if my wife should die during the life of my daughter without leaving issue by me, or in case she leave such issue, and such issue shall not survive my daughter, then, and in either of said cases, to pay the whole of the said net income to the survivor of my said wife and daughter; and upon the decease of such survivor leaving issue to distribute the principal of the trust fund among my issue; and if on the decease of such survivor there should be no living descendant of mine, then to distribute said principal among my own right heirs, unless my said adopted son, Thomas Blanchard Jr., or some issue of his, be then living, and in that case to pay over to him if living, or to his issue, if he be not then living, one half part of said principal fund.

" So long as the condition of the mind of my daughter is such as to require a guardian for her, I direct the said trustee to pay her guardian so much of the income hereinbefore appropriated to her as may be necessary for her comfortable maintenance and support, and to add the balance of said income if any there be, to the principal of the fund; and if thereafter there shall be a deficiency of income in any year, or if from any other cause, a sum greater than her share of the annual income of the fund, should be deemed necessary or desirable for her comfort, then the trustee may devote such additions or reserves of income to such purpose; but if no such exigency should arise during the life of my daughter, the said reserves shall be disposed ot as if they formed part of the original principal of the trust fund upon her decease."

The fund now amounts to about $85,000, all in personal securities, real estate formerly constituting a part having been sold. It was agreed by the parties, and incorporated in the reservation of the single justice, by which the case is brought here, that Thomas Blanchard, Jr., being now alive, is entitled to one half of the trust fund. This inquiry relates only

to the disposition of the remaining half. The testator provides that this shall be distributed " among my own right heirs." The principal question argued has been whether such heirs are to be ascertained as of the death of the testator or as of the death of the last surviving life tenant, that is to say, whether the estate in remainder vested at the death of the testator or was contingent until the time for distribution arrived. It has long been a rule of construction that estates arising under a will should be treated as vesting immediately, unless the testator has manifested by clear language an opposite intent. *Bosworth* v. *Stockbridge*, 189 Mass. 266.. *Minot* v. *Purrington*, 190 Mass. 336. *Gardner* v. *Skinner*, 195 Mass. 164. But it has been laid down in early as well as recent cases, as was said by Hammond, J., in *McCurdy* v. *McCallum*, 186 Mass. 464, 469, that " The cardinal rule in the interpretation of wills, to which all other rules must bend, is that the intention of the testator shall prevail, provided that it is consistent with the rules of law." *Olney* v. *Hull*, 21 Pick. 311, 313. *Crapo* v. *Price*, 190 Mass. 317, 320. Taking into account the situation of the testator with reference to his wife, daughter and other kindred at the time of the execution of his will, and the language employed, his intent appears to have been to create a contingent rather than a vested interest. The reasons which lead to this conclusion are as follows: It is manifest that he did not intend, in using the words, " my own right heirs," to include his daughter or any of his descendants. He draws a clear distinction as to the distribution of the residuum between his descendants and his heirs. He employs these words as descriptive of different classes of beneficiaries. The direction to distribute to his heirs is to take effect only in the event that, at the decease of the survivor of his wife and daughter, there shall at that time be living no descendant of his. The word " descendant " is used in its ordinary sense, as meaning those who can trace their origin directly to the testator as ancestor. *Baker* v. *Baker*, 8 Gray, 101, 120. *Ralph* v. *Carrick*, 11 Ch. D. 873. It follows, therefore, that he intended his heirs to be ascertained only in the event that he left no descendant. His language does not manifest the desire disclosed in *Minot* v. *Harris*, 132 Mass. 528; *White* v. *Springett*, L. R. 4 Ch. 300, and *Lee* v. *Lee*, 1 Dr. & Sm. 85, 91, that the heirs

should be ascertained as if his daughter and descendants did not exist, but rather shows a wish to examine that question only at a time when descendants shall have been conclusively determined not to exist, which, under the circumstances here disclosed, could not be at the testator's death but at the death of the surviving life tenant.

Again, the vesting of any interest in Thomas Blanchard, Jr., or his issue, is by the clear terms of the will made contingent upon one or the other being alive at the time of the distribution, that is, at the death of the last surviving life tenant. This point has been treated as tending to show that "the vesting of the whole was postponed till the arrival of the event on which the distribution is made to depend." *Hale* v. *Hobson*, 167 Mass. 397, 398. *Hall* v. *Hall*, 123 Mass. 120.

Then, too, there is an absence of the consideration, which, when present, has a tendency to indicate that a vested remainder is created, in that the limitation is not to the children of the testator. Weight oftentimes is attached to this factor. *Gibbens* v. *Gibbens*, 140 Mass. 102. *Stanwood* v. *Stanwood*, 179 Mass. 223. *Bancroft* v. *Fitch*, 164 Mass. 401. *Smith* v. *Rice*, 130 Mass. 441. *Denny* v. *Kettell*, 135 Mass. 138. *Harding* v. *Harding*, 174 Mass. 268.

Moreover, the will contains no words of present gift to the "right heirs" of the testator. The trustee is directed to pay the income of the fund, with the exception of the accumulation, to the wife and daughter and to the survivor and the issue of either, if deceased, until the death of the last survivor, when only the principal fund is to be divided by the trustee. This language is some indication of an intent that the title should not vest until the period of distribution arrives. The word "then" in the sixth line from the last of the first paragraph of clause above quoted, in connection with the language which goes before and that which follows, is used not to state a consequence of the contingency immediately preceding but to fix a point of time, while "distribute" in the next line describes a vesting of the interest. *Eager* v. *Whitney*, 163 Mass. 463. *Peck* v. *Carlton*, 154 Mass. 231. *Hale* v. *Hobson*, 167 Mass. 397.

Another consideration is that the chief care of the testator in framing his will was for the support of his widow and daughter

during their lives, and the support of any issue that he might leave by his wife or that his daughter might have.

The provisions of the will respecting these matters show that he had carefully elaborated, presumably, from the phraseology of the instrument, with the assistance of counsel, a scheme intended to cover every contingency which Providence might have in store for his immediate family. After having exhausted his ingenuity respecting these near objects of his bounty, in order that there might be no intestacy, and thereby the daughter or her heirs at law receive the residuum, he contemplated the possibility that, at the death of the last survivor of his immediate family, it might then for the first time be conclusively ascertained that no descendant of his would survive, and, if that contingency should happen at that time, then one half his estate should go to Thomas Blanchard, Jr., (who, although no kindred of the testator and not in fact adopted by him, had yet been an inmate of his household for many years,) or his issue, and the other half to those who at that time might answer the description of the testator's " own right heirs." The general plan of the will indicates an intent that only upon the happening of this last contingency should those, who now turn out to be his beneficiaries, be ascertained. *Eager* v. *Whitney*, 163 Mass. 463. *Cronan* v. *Adams*, 185 Mass. 436. *Hale* v. *Hobson*, 167 Mass. 397. *Fargo* v. *Miller*, 150 Mass. 225. *Wharton* v. *Barker*, 4 Kay & Johns. 483. *White* v. *Springett*, L. R. 4 Ch. 300. *Wood* v. *Bullard*, 151 Mass. 324, 335, and cases cited. *Crapo* v. *Price*, 190 Mass. 317.

It is not necessary to decide whether the words, " own right heirs," mean common law heirs, as appears to be the law in some jurisdictions, *Garland* v. *Beverley*, 9 Ch. D. 213, *Owens* v. *Gibbons*, [1902] 1 Ch. 636, *Mason* v. *Baily*, 6 Del. Ch. 129, *In re McCrea*, 180 Penn. St. 81, or whether they are the same in effect as " heirs " or " heirs at law " and include the surviving wife. *Olney* v. *Lovering*, 167 Mass. 446. *International Trust Co.* v. *Williams*, 183 Mass. 165. *Gray* v. *Whittemore*, 192 Mass. 367. See also *Brown* v. *Wright*, 194 Mass. 540 ; *Minot* v. *Harris*, 132 Mass. 528.

The residuum is to be distributed among those persons who would have been the testator's own right heirs if his wife had

predeceased and he had died intestate at the instant his wife in fact died. *Lincoln* v. *Perry*, 149 Mass. 368. *Heard* v. *Read*, 169 Mass. 216, 224. These are the persons, and they take the shares of those who would have inherited the real estate in the event of intestacy. The testator in effect incorporated into his will as a part of its terms the statute as to the descent of the real estate of an intestate as it might be at the death of the survivor of his wife and daughter. Therefore St. 1876, c. 220, § 5, is not applicable. *Fabens* v. *Fabens*, 141 Mass. 395. *Olney* v. *Lovering*, 167 Mass. 446. *International Trust Co.* v. *Williams*, 183 Mass. 173.

The distribution is to be made as provided in R. L. c. 133, § 1, cl. 5. At the time of the decease of the testator's wife in 1905, the nearest living kindred of the testator were nineteen grand nephews and grand nieces, who will share *per capita* in the residuum, and the children of two deceased grand nephews and of one deceased grand niece, who will take by right of representation the shares which their deceased parents respectively would have taken if living. *Balch* v. *Stone*, 149 Mass. 39. *Codman* v. *Brooks*, 167 Mass. 499. *Paine, petitioner*, 176 Mass. 242.

*So ordered.*